# IN RE EMILE L.*
## (AC 32295)
## (AC 32330)

Bishop, Beach and West, Js.

Argued November 9, 2010—officially released January 25, 2011

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Edward L.*, pro se, the appellant in AC 32295 (respondent father).

*Julie L.*, pro se, the appellant in AC 32330 (respondent mother).

*Tammy Nguyen-O'Dowd*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, former attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Melissa A. Federico*, for the minor child.

*Opinion*

PER CURIAM. The respondent mother and the respondent father, appearing pro se, appeal separately from the judgment of the trial court terminating their parental rights as to their minor child, Emile.[1] On appeal, the respondents appear to present the following collective claims: (1) the court improperly determined that they had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the child's life pursuant to General Statutes § 17a-112

---

[1] In docket number AC 32330, the mother appeals from the court's judgment terminating her parental rights. In docket number AC 32295, the father appeals from the court's judgment terminating his parental rights. Although the respondents have filed separate appeals, the claims raised in each appeal are identical. Therefore, we will review these claims collectively. At trial, each respondent was represented by counsel.

(j) (3) (B)[2] and (2) this court should transfer guardianship of the child to the paternal grandmother.[3] We affirm the judgment of the trial court.

The record discloses the following procedural history. On June 30, 2009, the petitioner, the commissioner of children and families, filed a petition seeking the termination of the parental rights of the respondent parents. On November 30, 2009, the court, *Esposito, J.*, held a one day hearing. After the completion of the trial, Judge Esposito became ill and died on January 9, 2010. Subsequently, each respondent filed a motion for a mistrial.[4] On February 17, 2010, the petitioner filed a

---

[2] General Statutes § 17a-112 (j) (3) (B) provides for the termination of parental rights when the child "(i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner [of children and families] for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] In their appellate briefs, the respondents also make identical claims of ineffective assistance of counsel. "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *State* v. *Cotto*, 111 Conn. App. 818, 820–21, 960 A.2d 1113 (2008). Self-represented parties are not afforded a lesser standard of compliance, and "[a]lthough we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law." (Internal quotation marks omitted.) *Edelman* v. *Page*, 123 Conn. App. 233, 242, 1 A.3d 1188, cert. denied, 299 Conn. 908, 10 A.3d 525 (2010).

In this case, the respondents have not articulated any legal authority for their claims nor have they shown how the alleged incompetency of their respective counsel contributed to the termination of their parental rights. "We decline to undertake appellate review of claims where there is no reasoned legal argument nor any citation to legal authority." *In re Michael L.*, 56 Conn. App. 688, 700–701, 745 A.2d 847 (2000). Accordingly, review of the respondents' ineffective assistance claim is denied.

[4] The mother filed a motion for a mistrial on February 9, 2010. The father filed a motion for a mistrial on February 15, 2010.

motion to appoint a successor judge. Following a hearing on March 1, 2010, the court, *Baldwin, J.,* granted the petitioner's motion. On April 14, 2010, the court, by way of a fifteen page memorandum of decision, granted the petition to terminate the respondents' parental rights.

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Sole S.,* 119 Conn. App. 187, 191, 986 A.2d 351 (2010).

I

In their first claim, both respondents appear to argue that the court improperly found by clear and convincing evidence that they had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) that would encourage the belief that within a reasonable time they could assume a responsible position in Emile's life. We disagree and address each of the respondent's claims in turn following our recital of relevant law.

"We have stated that [p]ersonal rehabilitation as used in [§ 17a-112] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates

to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . Rehabilitate means to restore [a . . . delinquent person] to a useful and constructive place in society through social rehabilitation. . . . It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) *In re Devon W.*, 124 Conn. App. 631, 644, 6 A.3d 100 (2010).

A

The father argues with respect to this claim that, because "he completed most of the programs" ordered by the department of children of families (department), he satisfied the requirements of § 17a-112 (j) (3) (B). He also avers that the department mandated an excessively onerous rehabilitation program and "wanted him to do the impossible" and to participate in such programs at the expense of losing his employment.[5] We are not persuaded.

In its memorandum of decision, the court found these arguments to be unavailing and concluded that the father had failed to participate seriously in any court-ordered treatment to address his significant mental health issues. Specifically, the court cited the father's "continued excessive use of alcohol and illegal substances," coupled with his unrelenting pattern of

---

[5] The court also found that there was no ongoing parent-child relationship between the father and Emile pursuant to § 17a-112 (j) (3) (D). Because we conclude that the evidence was sufficient to support the court's finding that the father had failed to achieve sufficient personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (ii), we need not address this issue. See *In re Melody L.*, 290 Conn. 131, 143 n.9, 962 A.2d 81 (2009).

domestic violence, as conditions dispositive of his failure to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B). These findings of noncompliance were supported by evidence that the father frequently refused to submit to hair and urine drug screenings from June to November, 2009, and that he blatantly refused to participate in a treatment program for domestic batterers,[6] notwithstanding his extensive, well chronicled, and ongoing history of domestic violence. Accordingly, the court's finding that the father failed to achieve a sufficient degree of personal rehabilitation as required under the statute was not clearly erroneous.

### B

The mother's argument with respect to this claim also appears to rely on her participation in certain treatment programs, ordered by the department, as being indicative of her rehabilitation. In support of her claim, she argues that she "completed all of the programs" that were ordered by the department. She also appears to assert that the court failed to take into account a back injury that rendered her unable to walk as a mitigating factor in her rehabilitation efforts. These arguments are without merit.

Although the court acknowledged that the mother had attended scheduled visits with Emile and developed a relationship with her, it concluded ultimately that her enduring drug use, issues of domestic violence and her established history of prebirth abuse were dispositive factors in its conclusion that she had failed to achieve a sufficient degree of rehabilitation pursuant to the statute. See *In re Trevon G.*, 109 Conn. App. 782, 791, 952 A.2d 1280 (2008) (rejecting claim that respondent's

---

[6] There is ample evidence in the record that the father was addicted to cocaine and marijuana and has engaged in an ongoing pattern of violent behavior for many years.

compliance with rehabilitation program bars termination of parental rights). A close examination of the record reveals that there is ample evidence to support the court's finding. The mother has a long-standing addiction to illegal substances. Since Emile's birth, she has failed repeatedly to participate in any meaningful treatment, despite an abundance of services offered to her. She has continually attempted to evade any type of drug testing, and on the rare occasion that she did submit to a drug test, she tested positive for cocaine. Moreover, the mother has a significant history of being the victim of, and engaging in, domestic violence with the father, all the while refusing treatment regarding this maladaptive behavior.[7] Accordingly, the finding that the mother failed to achieve a sufficient degree of personal rehabilitation as required under the statute is not clearly erroneous.

We have examined the record and briefs and have considered the arguments of the parties and see no useful purpose in further repeating the facts or reciting the applicable law, as the court thoroughly set forth the relevant facts and the applicable law in its thoughtful and well reasoned decision. Based on our careful review, we conclude that the record amply supports the factual determinations made by the court, and we conclude that the court correctly applied the law to the facts it properly found. See *In re Mariah P.*, 109 Conn. App. 53, 55, 949 A.2d 1292, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008).

---

[7] A review of the record reveals two recent incidents that illustrate the respondents' predilection toward violence. On April 12, 2008, each was arrested for breach of the peace for an incident in which both father and mother physically assaulted each other. This incident resulted in a protective order being issued, restraining them from engaging in further assaultive behavior toward one another. In August, 2008, the respondents admitted to another incident of physical violence at the home of the mother's parents after police were called and discovered a blood trail leading into the residence.

## II

Next, the respondents claim, in the alternative, that in the event that this court should deny their appeals, we should transfer the guardianship of Emile to her paternal grandmother. Our thorough review of the record reveals that the respondents have failed to preserve this claim and that there is no record for our review. It is well settled that the appellants must provide this court with an adequate record for review. Here, the mother did not file a motion to transfer guardianship until February 9, 2010, after the trial was completed and, moreover, failed to raise the issue during the hearing to appoint a successor judge.[8] The mother declined to challenge the legal analysis underlying the court's decision that the motion to transfer guardianship was moot and appears to raise on appeal an argument that was not addressed in the trial court. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision

---

[8] On February 9, 2010, after the close of evidence, the mother filed a motion for a mistrial in response to the petitioner's motion to appoint a successor judge. That same day, the mother also filed a motion to transfer guardianship of Emile to the paternal grandmother. On March 1, 2010, a hearing was held on the petitioner's motion to appoint a successor judge, and the court granted that motion. Our review of the record reveals that at no time during that hearing did the mother address her motion to transfer guardianship, nor did she move the court to open the evidence in order to rule on the motion. Subsequently, the court found the motion to transfer guardianship moot. Thereafter, the mother failed to seek an articulation regarding the court's ruling and, thus, failed to provide this court with an adequate record for review. See Practice Book § 61-10 ("It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this section, the term 'record' is not limited to its meaning pursuant to Section 63-4 (a) (2), but includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety.").

made by us [respecting the respondents' claim] would be entirely speculative." (Internal quotation marks omitted.) *In re Tayler F.*, 111 Conn. App. 28, 51, 958 A.2d 170 (2008), aff'd, 296 Conn. 524, 995 A.2d 611 (2010). Accordingly, we decline to review this claim.

The judgment is affirmed.