LOST TRAIL, LLC *v.* TOWN OF WESTON
(AC 33881)

Lavine, Beach and Alvord, Js.

Argued September 12, 2012—officially released January 15, 2013

*Robert A. Fuller*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom were *Patricia C. Sullivan* and, on the brief, *Kevin M. Tighe*, for the appellee (defendant).

*Opinion*

BEACH, J. Approximately fifteen years ago, the plaintiff, Lost Trail, LLC (Lost Trail), purchased two adjacent parcels of land in the town of Weston (town). Lost Trail's apparent intention was to divide the aggregated land into four lots suitable for building under the town's zoning regulations. After Lost Trail reconfigured its property, consistent with this purpose, town officials informed Lost Trail that its actions had resulted in a subdivision, which required approval from the town planning and zoning commission (commission), and that building permits would not be issued until such approval was obtained. Lost Trail has spent the past seven years in federal and state court challenging the town's position that its land had been subdivided. It declined, however, to go to the commission until seven of its eight counts had been dismissed for its failure to avail itself of administrative remedies. Because of this failure, we affirm the judgment of the trial court.[1]

The following facts, and substantial procedural history, are relevant to the disposition of this appeal. In November, 1997, Lost Trail purchased two adjacent parcels of land abutting Georgetown Road in the town. The northerly lot was 5.79 acres in size and is depicted on town land records map # 515. The southerly 3.31 acre lot is indicated on land records map # 475. Both parcels existed before the enactment of zoning regulations in the town.

On July 17, 1998, Lost Trail recorded map # 3438 in the town land records, which purportedly adjusted the boundaries of the two lots. The property line was adjusted to move 2.117 acres from the northerly parcel to the southerly parcel and 0.588 acres from the southerly parcel to the northerly parcel. Consequently, the

---

[1] The three counts at issue in this appeal were dismissed by the court's granting of two separate motions to dismiss.

northerly parcel consisted of approximately 4.26 acres and the southerly parcel consisted of approximately 4.84 acres.

On August 18, 1998, Lost Trail recorded maps # 3440 and 3441. These maps respectively divided the northerly parcel into parcels 515A, containing 2.03 acres, and 515B, containing 2.12 acres, and the southerly parcel into parcels 475A, containing 2.54 acres, and 475B, containing 2.26 acres. Additional minor boundary line adjustments were made to the four parcels and recorded on maps # 3443 (for the northerly parcels) and # 3444 (for the southerly parcels). All of the resulting parcels consisted of more than two acres of land.[2]

Prior to the recording of maps # 3438, 3440, 3441, 3443, and 3444, the maps were presented to the town zoning enforcement officer, E. Edward Hahne; town engineer, John Conte; and assistant town attorney, Christopher Jarboe. Hahne and Conte signed the maps and stamped them with the following text: "The Town Engineer and Code Enforcement Officer hereby attest to the fact that this plan is neither a subdivision nor a resubdivision as defined by the General Statutes of Connecticut and the Town of Weston and may be recorded without prior approval of the Weston Planning and Zoning Commission." The stamped maps were then filed in the town land records. Lost Trail subsequently mortgaged the property to Wilton Bank on the understanding that it was effectively divided into four lots.

On February 14, 2000, Barry Hawkins, special counsel for the town, sent a letter to counsel for Lost Trail. Hawkins stated that, under Connecticut law and the town's planning and zoning regulations and subdivision bylaws, Lost Trail had needed to obtain subdivision

---

[2] The Georgetown Road property is located in an area of the town with zoning regulations that require a minimum lot size of two acres.

approval from the commission to divide the Georgetown Road property as it had.[3] In Hawkins' view, Lost Trail's "extensive and aggressive lot line adjustments" were an obvious attempt to "circumvent compliance with [the town's] Subdivision By-Laws." Because Hawkins opined that the attempted division of the two original parcels into four lots was invalid, he further informed Lost Trail that he had advised the town's zoning enforcement and building officials not to issue zoning or building permits to Lost Trail, should it attempt to develop the lots. Hawkins concluded by recommending that Lost Trail apply to the commission for subdivision approval if it wished to divide or to redivide its lots. He stated that "[t]he [commission] is willing to work with [Lost Trail] to accomplish reasonably the safe and proper development of [its] properties in accordance with applicable subdivision statutes and regulations." Hawkins additionally noted that if, despite his admonition, Lost Trail applied for building permits and was denied, such denial could be appealed.[4]

Hawkins' position was reiterated in a subsequent letter to the town tax assessor, dated March 22, 2000, which stated that the lot line adjustments reflected in the recorded maps did not create additional building lots. Therefore, Hawkins counseled that Lost Trail should be taxed as if it owned only a single parcel of land. In May, 2000, the town tax assessor revised the tax assessment map so that Lost Trail's Georgetown Road property was a single lot.

Lost Trail did not pursue subdivision approval from the commission, as Hawkins had suggested. Instead, counsel for Lost Trail requested that town attorney G.

---

[3] The letter also dealt with similar issues regarding the development of lots Lost Trail owned on Ladder Hill Road, which are not at issue in this case.

[4] Lost Trail alleged that Hawkins' actions were part of a larger effort by the town to frustrate or " 'shut down' " the real estate development activities of Lost Trail principal Robert Walpuck.

Kenneth Bernhard reconsider the position, articulated by Hawkins, that the division of the lots created a subdivision. Lost Trail asserted that its division of the Georgetown Road parcels did not constitute a subdivision under General Statutes § 8-18, a position claimed to be validated by this court's opinion in *Goodridge* v. *Zoning Board of Appeals*, 58 Conn. App. 760, 755 A.2d 329, cert. denied, 254 Conn. 930, 761 A.2d 753 (2000). Bernhard apparently was not persuaded.

In December, 2005, Lost Trail commenced this action by way of an eight count complaint asserting federal and state law claims. As to the federal claims, brought under 42 U.S.C. § 1983, Lost Trail alleged that the town had deprived it of equal protection of the law, substantive and procedural due process and had committed an inverse condemnation or regulatory taking without just compensation. As to the state law claims, Lost Trail: asserted a claim of inverse condemnation or regulatory taking under article first, § 11, of the Connecticut constitution; sought a declaratory judgment that a subdivision had not occurred, that the boundary lines of the two original parcels lawfully could be adjusted and then divided into two lots without subdivision approval, and that zoning and building permits should be issued for any of the lots that complied with zoning regulations; and claimed that the town should be estopped from requiring Lost Trail to obtain subdivision approval and should be compelled to issue building permits for the lots.

The case was removed to the United States District Court for the District of Connecticut. The town filed a motion to dismiss Lost Trail's amended complaint, and the District Court dismissed the five federal causes of action for lack of ripeness. See *Lost Trail, LLC* v. *Weston*, 485 F. Sup. 2d 59, 60, 66 (D. Conn. 2007). The District Court held that, "Lost Trail has failed to seek any relief from the Zoning Board of Appeals, which will

typically be the venue from which a final, definitive decision will emanate. . . . Until this variance and appeals process is exhausted and a final, definitive decision from local zoning authorities is rendered, this dispute remains a matter of unique local import over which we lack jurisdiction." (Citation omitted; internal quotation marks omitted.) Id., 66. The District Court consequently declined to exercise supplemental jurisdiction over Lost Trail's state law claims. Id. The United States Court of Appeals for the Second Circuit affirmed the judgment of the District Court by summary order. See *Lost Trail, LLC* v. *Weston*, 289 Fed. Appx. 443 (2d Cir. 2008).

On remand to state court, the town moved to dismiss the three remaining state law claims in two separate motions. The trial court, *Pavia, J.*, dismissed the inverse condemnation claim and request for declaratory relief. The court held that the takings claim was not ripe for adjudication because there had not been a final decision rendered by the commission. The declaratory judgment claim was dismissed because Lost Trail had failed to exhaust available administrative remedies.

The municipal estoppel claim was dismissed by the court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee, on June 9, 2011. By that time, Sovereign Bank had acquired title to parcel 515A as a result of a foreclosure proceeding, leaving Lost Trail as the owner of only three of the four putative lots.[5] Additionally, Lost Trail had finally obtained a determination from the commission that its lot line adjustments had not resulted in the creation of a subdivision or resubdivision.[6] Because of

---

[5] During the course of this dispute, Wilton Bank released one of the four lots from its mortgage. Lost Trail subsequently mortgaged this released lot to Sovereign Bank.

[6] The commission addressed only the legal effect of the shifting of the boundary lines and subsequent division of the two parcels; it was not asked to approve a subdivision or to determine whether the existing lots comported with zoning requirements.

these developments, the town asserted that the municipal estoppel claim was moot. The court disagreed that the claims were moot because even though the town had agreed that Lost Trail's reorganization of the property did not constitute a subdivision or resubdivision, it had not considered the issue of whether building permits would be issued to Lost Trail. Thus, the court concluded that, "at least part of the claim and prayer for relief is not moot . . . ." The court also held that the loss of only one of the four lots to foreclosure did not render Lost Trail's claims moot.

The court nonetheless dismissed Lost Trail's final claim for lack of ripeness, as it had failed to seek building permits from the town, and, therefore, its claimed injuries were merely speculative. Lost Trail's motion to reargue, to reconsider and to alter the judgment was subsequently denied. This appeal followed.

I

Lost Trail first claims that the court erred by dismissing its regulatory takings claim for failure to obtain a final administrative decision. Lost Trail essentially contends that its division of the Georgetown Road property plainly did not constitute a subdivision under § 8-18; thus, as a matter of law, the commission had no jurisdiction over the matter. In Lost Trail's view, "[t]here was nothing for the . . . [c]ommission to decide as to either (1) whether subdivision approval was necessary for the property . . . or (2) to review and approve (or deny) a subdivision application." Because this issue was beyond the commission's purview, Lost Trail asserts that the finality requirement is simply beside the point.

Lost Trail additionally argues that, even if it was required to seek the commission's consent, the town effectively approved the division of the two preexisting parcels into four separate lots in August, 1998, when

the final maps were stamped and signed by town officials and recorded in the town land records. Lost Trail characterizes the town's subsequent actions as a revocation of this apparent approval, which revocation inflicted an immediate injury ripe for adjudication.

The town, on the other hand, asserts that it contested in good faith Lost Trail's position that its division of the subject property did not create a subdivision under § 8-18.[7] The town argues that whether Lost Trail's adjustments of its property lines resulted in a subdivision under § 8-18 was an issue to be resolved by the commission; it was not Lost Trail's prerogative to determine on its own whether the commission had jurisdiction over the issue in the first place.[8]

The town additionally takes issue with Lost Trail's contention that the stamps applied to the maps filed in the town land records operated as municipal approval

---

[7] As a preliminary matter, the town asserts that Lost Trail's claims are moot because the three remaining Georgetown Road lots were lost to foreclosure some time after the June 9, 2011 judgment dismissing Lost Trail's municipal estoppel claim. A decision that accepted Lost Trail's argument that it need not have engaged the commission in the zoning approval process would preserve its claim for damages; therefore, we have jurisdiction to hear this appeal in order to evaluate the merits of Lost Trail's position.

[8] Under Connecticut law, for the division of land to be considered a subdivision, "[t]he division of land must occur subsequent to the adoption of subdivision regulations by the planning commission. The division must be made into three or more parts or lots. Accordingly, any divisions of the land prior to the adoption of subdivision regulations don't count, and the first division thereafter, namely into two lots, is exempt as a so-called 'free cut.' " R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 10:9, p. 290.

The town's position, which was articulated in the Hawkins letter of February 14, 2000, was that Lost Trail had created a subdivision through its significant lot line adjustments and the subsequent division of each of the resulting parcels into two lots. The town stated that *Goodridge* v. *Zoning Board of Appeals*, supra, 58 Conn. App. 760, which involved a minor boundary line revision of 0.005 acres, was distinguishable from the more substantial boundary shifting that occurred here. We need not evaluate the merits of the town's limiting interpretation of *Goodridge*.

of the division of the property. The town asserts that the stamp "does not state that the property on those maps is exempt from subdivision regulations. The stamp simply sets forth that the property depicted on the maps is not a subdivision (because the purported divisions have not been reviewed and approved by the . . . [c]ommission) . . . ." Moreover, the town argues that the officials who signed the stamp—the zoning enforcement officer and the town engineer—were not vested with the authority to determine whether division of land created a subdivision. Such a determination, the town contends, could be made only by the commission, pursuant to General Statutes § 8-26.

We begin by setting forth our standard of review. "In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary." (Internal quotation marks omitted.) *Greco Construction* v. *Edelman*, 137 Conn. App. 514, 516–17, 49 A.3d 256 (2012).

"An inverse condemnation claim accrues when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding. . . . [W]hether a claim that a particular governmental regulation or action taken thereon has deprived a claimant of his property without just compensation is an essentially ad hoc factual inquir[y]. . . . Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." (Citations omitted; internal quotation marks omitted.) *Rural Water Co.* v. *Zoning*

*Board of Appeals,* 287 Conn. 282, 298–99, 947 A.2d 944 (2008).

"It follows from the nature of a regulatory taking claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes. . . . Until a property owner has 'obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed.' " *Port Clinton Associates* v. *Board of Selectmen,* 217 Conn. 588, 600, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991). A final decision has been rendered when "the initial decision-maker [has] arrived at a definitive position on the issue that inflict[ed] an actual, concrete injury . . . ." (Internal quotation marks omitted.) Id., 601. "If a property owner has not obtained a final decision from the administrative agency applying the regulation, the reviewing court lacks jurisdiction to rule on a taking claim. The jurisdictional nature of finality derives from its similarity to ripeness." (Internal quotation marks omitted.) Id., 604.

"Cogent reasons of policy dictate that [courts] defer definitive resolution of . . . plaintiffs' claims for compensation to await a local administrative response to their development plans. . . . Because what constitutes a taking is difficult to define and what amount is just compensation is difficult to calculate, a court, in the proper circumstances, is well advised to stay its hand to allow for political choices and settlements . . . ." (Citations omitted.) *Luf* v. *Southbury,* 188 Conn. 336, 353, 449 A.2d 1001 (1982).

The rationale for requiring a final and authoritative determination from local administrators as a prerequisite to asserting a regulatory takings claim is well illustrated here. Although Hawkins suggested that, in his opinion, Lost Trail's division of the Georgetown Road property created a subdivision, he did not have the authority to speak for or to bind the commission. Indeed, he recommended that Lost Trail apply for subdivision approval and stated that the commission was willing to work with Lost Trail to ensure the safe and proper development of the Georgetown Road property. This correspondence cannot be considered a " 'definitive position on the issue' " from an authoritative " 'initial decision-maker.' " See *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 601; see also *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 213, 719 A.2d 465 (1998) (*"preliminary* regulatory activity may not work a taking in the same way as a final regulatory decision" [emphasis in original]). Lost Trail could only speculate if the commission would have agreed with Hawkins or if it would have permitted development on all, none or some of its four lots on Georgetown Road.[9] Without such a baseline, a court cannot determine if a taking has occurred, and, if so, what amount of compensation is due to the property owner.

Lost Trail tries to circumvent the finality requirement by arguing that its use of the subject property so obviously did not constitute a subdivision that the commission's involvement was gratuitous. Strength of

[9] Although Lost Trail unsuccessfully applied for a special permit to build a baseball field in 2002 and for a zoning permit on Lot # 515B in 2007, Lost Trail did not take the preliminary step of applying to the commission for a determination of whether or not subdivision approval was required to divide its property into four lots. Ultimately, the commission, pursuant to its authority under § 8-26, found that Lost Trail's lot line adjustments did not create a subdivision or resubdivision. Lost Trail sought such a determination and does not contest that the commission possessed the authority to determine whether land division results in a subdivision.

unilateral conviction is not, however, a substitute for a final administrative decision. As the town correctly points out, property owners cannot be their own arbiters of whether the commission has the authority to act. In similar contexts, our Supreme Court has held that administrative agencies should decide in the first instance whether a challenged action falls within their statutory purviews. See *Cannata* v. *Dept. of Environmental Protection*, 215 Conn. 616, 626–27, 577 A.2d 1017 (1990) (rejecting landowners' attempt to bypass exhaustion of administrative remedies on ground that their activities were outside of department of environmental protection's jurisdiction). Moreover, even if Lost Trail had been correct in its assertion that its division of the Georgetown Road property did not create a subdivision—an issue which we need not decide—judicial review, in the event of an adverse administrative decision, undoubtedly would have benefited from the factual record developed by the commission and the application of its expertise. See id., 625.

Furthermore, by refusing to engage the commission in the zoning approval process, Lost Trail eliminated the possibility that this matter could be resolved by local political choices and settlements. See *Luf* v. *Southbury*, supra, 188 Conn. 353. Lost Trail's prediction of futility turned out to be wrong—in January, 2011, the commission agreed with Lost Trail and disavowed Hawkins' position. In a carefully reasoned opinion, the commission acknowledged that there was disagreement as to the impact of significant lot line adjustments on the subdivision analysis. In the absence of clear guidance on this issue, the commission concluded that it ought not attempt to determine on an ad hoc basis what sorts of boundary line adjustments created subdivisions. Thus, it applied the plain language of § 8-18, which defines subdivision as the division of a parcel of land into three or more parts, and concluded that Lost Trail's

configuration of its property did not result in a subdivision or resubdivision and, accordingly, did not require commission approval.

The commission also considered the effect of the stamps that were affixed on the maps filed in the town's land records. The commission noted that the town, in recognition of the fact that "the existing stamp was ambiguous at best or, at worst, stated the precise opposite of the intention to which it was being placed," revised the stamp's text in an attempt to clarify its meaning.[10] While acknowledging the confusion created by the old text and the apparent authority of the town officials who had signed it, the commission determined that under Connecticut law, it was the sole entity that could assess whether property was a subdivision and that such authority was not delegable. Thus, the commission declined to be bound by the alleged import of the old stamps, which the commission had not endorsed.

"[N]otions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. . . . [I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 625. If Lost Trail had sought the opinion of the commission when Hawkins first suggested that Lost Trail's use of its property created a subdivision, these issues could have been settled—that is, the commission would have been given the

---

[10] The modified text states in relevant part: "The existence of this stamp does not sanction, and should not be interpreted as sanctioning, any development of the property shown on the map or any individual parcels that may be depicted thereon. This stamp does not represent an approval of any kind with regard to the status of the parcel as a building lot or its suitability for division by first cut, subdivision or resubdivision."

opportunity to adopt or to correct Hawkins' position. If the commission, as constituted twelve years ago, had decided these issues favorably to Lost Trail, Lost Trail could have then sought building permits and zoning certification. Had it decided the issue adverse to Lost Trial, Lost Trail presumably could have appealed years ago. Having failed to do so, it cannot now challenge the town's actions in court as an unconstitutional taking.

## II

Lost Trail alternatively claims that its failure to obtain a final and authoritative administrative decision is excused by the futility of pursuing such a course. See *Murphy* v. *New Milford Zoning Commission*, 402 F.3d 342, 349 (2d Cir. 2005) ("[a] property owner . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile"). This position is also unavailing.

The crux of Lost Trail's futility argument is that once Hawkins informed zoning and building officials that, in his opinion, Lost Trail had illegally subdivided its property, it was pointless to apply for zoning certificates and building permits from those officials because § 8-3 (f) precludes a building official from issuing a building permit in the absence of a zoning permit or certificate in writing from the zoning enforcement official that the proposal is consistent with zoning regulations. Lost Trail additionally contends that an application for zoning permits, without first engaging the commission in the zoning approval process, would have been futile because the town did not recognize the attempted division of its property into four lots.

Having already rejected Lost Trail's reasons for opting out of the planning and zoning review process, we hold that its futility argument must also fail. Although a property owner need not pursue "patently fruitless

measures" to satisfy the finality doctrine; (internal quotation marks omitted) *Port Clinton Associates* v. *Board of Selectmen,* supra, 217 Conn. 607; it cannot claim futility by setting up its own obstacles. Put simply, Lost Trail claims that it would have been futile to pursue step two of an administrative process, applying for zoning and building permits, because it refused to engage in step one, pursuing the opinion of the commission as to whether a subdivision had been created. Lost Trail essentially concedes this point when it states that applications for zoning and building permits "were futile at least until the [commission] confirmed in January, 2011, that the four lots were not a subdivision and did not require subdivision approval." This is exactly why Lost Trail should have gone to the commission before initiating this litigation.

Moreover, "[i]t is futile to seek a[n] [administrative] remedy only when such action *could not* result in a favorable decision and *invariably* would result in further judicial proceedings." (Emphasis in original; internal quotation marks omitted.) *Neiman* v. *Yale University,* 270 Conn. 244, 259, 851 A.2d 1165 (2004). It is clear that the commission could have determined that Lost Trail had not created a subdivision—as it later did—or approved an application to subdivide its property, clearing the way for zoning and building permits to be issued. Thus, we reject Lost Trail's attempt to bootstrap its way to futility.[11]

### III

Lost Trail next claims that the court erred in dismissing the count seeking a declaratory judgment for failure to exhaust administrative remedies. Under that count,

---

[11] In its reply brief, Lost Trail advances its futility argument by delineating its interactions with several town officials regarding the status of its Georgetown Road property: the town attorney, the zoning enforcement officer, and the tax assessor. None of these officials was a substitute for the commission.

Lost Trail sought a declaration that its adjustments of the Georgetown Road property lines did not create a subdivision, that the two parcels that existed prior to the enactment of subdivision regulations could lawfully be divided into two lots without subdivision approval, and that zoning and building permits must be issued for any lots that comply with zoning regulations.

Lost Trail's request for declaratory relief is essentially a repackaging of its regulatory takings claim. It asserts that it was not required to exhaust administrative remedies because its division of land did not create a subdivision and, "[w]here a division of land is not a subdivision it does not have to be submitted to the . . . commission for review." Thus, Lost Trail again attempts to define this dispute as beyond the commission's purview; but "[e]xhaustion is required even in cases where the agency's jurisdiction over the proposed activity has been challenged."[12] (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 103, 809 A.2d 492 (2002).

We are not persuaded by this alternative attempt to maneuver around the commission. A declaratory judgment action is "not intended to circumvent the well established principles of exhaustion." Id., 106. More importantly, these claims have been rendered moot by the loss of the remaining three Georgetown Road properties. to foreclosure. Although acceptance of Lost

---

[12] Lost Trail cites *Peninsula Corp.* v. *Planning & Zoning Commission*, 151 Conn. 450, 199 A.2d 1 (1964), in support of its position that declaratory judgment is a proper method for obtaining a judicial determination of whether a division of land created a subdivision under § 8-18. That case, along with *Dooley* v. *Town Plan & Zoning Commission*, 151 Conn. 151, 195 A.2d 432 (1963), held that town planning and zoning commissions did not have jurisdiction to invalidate a prior illegal subdivision that had not been submitted to the commission for review. These cases, however, were superseded by revisions to § 8-26, which provided that planning commissions "shall have the authority to determine whether the *existing division* of any land constitutes a subdivision or resubdivision . . . ." (Emphasis added.) Public Acts 1973, No. 73-550.

Trail's regulatory takings claim would potentially entitle it to damages, the loss of ownership leads to the conclusion that the relief requested under the count seeking a declaratory judgment can no longer be granted.

## IV

Lost Trail finally claims that the court erred in dismissing its municipal estoppel claim on ripeness grounds. Under the estoppel count, Lost Trail requested an order that zoning and building permits should be issued for lots that complied with town zoning regulations, and that the town should be estopped from requiring Lost Trail to seek subdivision review from the commission. In its reply brief, Lost Trail conceded that it is no longer entitled to obtain zoning and building permits and that the request for such permits under the estoppel count is now moot. It maintains, however, that its claim for money damages pursuant to its estoppel claim is still viable.[13]

We agree with the court that the estoppel claim is not ripe for adjudication. Lost Trail essentially argues that the town should be estopped from denying the purported approval of the division of its property that assertedly occurred when the maps were stamped and signed by town officials. Because Lost Trail eventually did obtain a determination from the commission that it had not created a subdivision, its estoppel claim seems to be that Hawkins' communications to Lost Trail were a repudiation of the earlier actions of town officers, which repudiation caused financial injury.

Lost Trail, however, cannot demonstrate that the town ever actually repudiated this apparent approval because Lost Trail did not engage in the zoning approval

[13] The town asserts that monetary damages are not recoverable pursuant to a municipal estoppel claim, and Lost Trail has not provided any authority to the contrary. Because of our determination that Lost Trail's municipal estoppel claim is not ripe for judicial review, we need not resolve this issue.

process. An essential element of a municipal estoppel claim is a showing that the town has attempted to " 'negate the acts of its agents.' " *O'Connor* v. *Waterbury*, 286 Conn. 732, 758, 945 A.2d 936 (2008). Lost Trail's claim fails because it is based on mere speculation that the commission would enforce the Hawkins position and abandon the alleged subdivision approval. As such, Lost Trail is attempting to estop a change in position that never occurred in any final or authoritative way. It is axiomatic that a claim is not ripe for adjudication when an injury is hypothetical, or a "claim [is] contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86–87, 952 A.2d 1 (2008).

Our conclusion is consistent with the general rule that "equitable estoppel is available only for protection and cannot be used as a weapon . . . ." (Internal quotation marks omitted.) *Dickau* v. *Glastonbury*, 156 Conn. 437, 442, 242 A.2d 777 (1968). Because Lost Trail's only interaction with the commission resulted in a favorable disposition, there is nothing to protect against.

The judgment is affirmed.

In this opinion the other judges concurred.