### JOHN RUTKA *v.* CITY OF MERIDEN
### (AC 34909)

DiPentima, C. J., and Gruendel and Dupont, Js.

---

Argued May 20—officially released August 27, 2013

*John Rutka*, self-represented, the appellant (plaintiff).

*Deborah L. Moore*, for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, John Rutka, appeals from the judgment rendered by the trial court in favor of the defendant, the city of Meriden, on his application to discharge four "mechanic's lien[s]" placed on his real property by the city. One of the liens was described by the court as an anti-blight lien and the other three liens were described as property maintenance liens. The court rendered judgment for the defendant as to two of the property maintenance liens, for the plaintiff as to the third property maintenance lien,[1] and dismissed the plaintiff's application to discharge the anti-blight lien for lack of subject matter jurisdiction. The plaintiff claims that the trial court improperly (1) denied his application to discharge two of the property maintenance liens, (2) dismissed his application to discharge the anti-blight lien for lack of subject matter jurisdiction, and (3) prevented him from presenting evidence

---

[1] The court granted the plaintiff's application to discharge the third property maintenance lien on the ground that the defendant's filing of the lien was untimely. Neither party appeals from that decision.

during his hearing.[2] We affirm the judgment of the trial court as to the property maintenance liens but set aside its judgment dismissing the anti-blight lien for lack of subject matter jurisdiction and, accordingly, remand the disposition of the anti-blight lien to the court for further proceedings.

The following facts and procedural history are relevant to this appeal. The plaintiff owns property located at 11 Colony Place in Meriden. His property had been the subject of various problems with blighted conditions over a seven year period, during which time the defendant eventually acted to clean and restore the property pursuant to the relevant statute and city ordinance. After the initial discovery of the poor conditions on the plaintiff's property in 2004, the defendant notified the plaintiff in writing that if he did not clean the property so that the violations no longer existed, he would be subject to citation pursuant to Chapter 159 of the City Code of Meriden (code).[3] The plaintiff was also

---

[2] It is difficult to identify the nature of all of the plaintiff's claims as set forth in his briefs. We have addressed the claims to the extent that they are analyzed. See *Paoletta* v. *Anchor Reef Club at Branford, LLC,* 123 Conn. App. 402, 406, 1 A.3d 1238 ("for this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs" [internal quotation marks omitted]), cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[3] Although the anti-blight lien certificate cites § 17.7 of the City Code of Meriden, it is undisputed that the code was recently renumbered and that Chapter 159 of the code contains the applicable ordinances. Chapter 159-1, as adopted by the city council of the defendant, states that "[t]his Chapter is to be known as the '*Anti-Blight Ordinance,*' and is enacted pursuant to the authority granted to the City of Meriden under Connecticut General Statutes § 7-148 (c) (7) (H) (xv)." (Emphasis added.)

Chapter 159-7, as adopted by the city council of the defendant, states that "[a]*ny unpaid fine* imposed pursuant to the foregoing anti-blight citation hearing procedure *shall constitute a lien* upon the real property against which the fine was imposed from the date of such fine *in accordance with* § *7-148aa of the Connecticut General Statutes. Said lien shall be continued, recorded, released and enforced as provided for in* § *7-148aa of said statutes.*" (Emphasis added.)

notified in writing that he had violated that code when he did not take measures to correct the blighted conditions on his property and that he would be issued a citation but that he could demand a hearing. The plaintiff took no action to either pay the fines or to contest the citation at that time, and, as such, the defendant levied an assessment against him and placed the November, 2005 anti-blight lien on the plaintiff's property pursuant to both the city ordinance, Chapter 159, and General Statutes (Rev. to 2005) § 7-148aa.[4] The discharge of that lien was the focus of the defendant's motion to dismiss for lack of subject matter jurisdiction and represents the unpaid citation for the plaintiff's violation of the city code, amounting to $3800, which continues to accrue daily.

The defendant took action, beginning in 2009, to correct the blight after the plaintiff did not clean his property. The additional three liens, placed on the plaintiff's property on November 19, 2009, January 20, 2010, and September 1, 2011, were property maintenance liens levied pursuant to General Statutes § 49-73b.[5] Those

---

[4] General Statutes (Rev. to 2005) § 7-148aa provides: "Any unpaid fine imposed by a municipality pursuant to the provisions of an ordinance regulating blight, adopted pursuant to subparagraph (H) (xv) of subdivision (7) of subsection (c) of section 7-148, shall constitute a lien upon the real estate against which the fine was imposed from the date of such fine. Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing property tax liens. Each such lien shall take precedence over all other liens filed after July 1, 1997, and encumbrances except taxes and may be enforced in the same manner as property tax liens."

Section 7-148aa was amended by Public Acts 2012, No, 12-146, § 4 (P.A. 12-146), effective October 1, 2012. Pursuant to P.A. 12-146, "penalty" was substituted for "fine." For convenience, subsequent references to § 7-148aa in this opinion will be to the current statutory revision, unless otherwise noted.

[5] General Statutes § 49-73b provides in relevant part: "(a) Any municipality that has incurred expenses for the inspection, repair, demolition, maintenance, removal or other disposition of any real estate in order to secure such real estate, to remedy a blighted condition on such real estate or to make it safe and sanitary under any provision of the general statutes or any

liens represent the value of the maintenance work performed by contractors hired by the defendant in order to bring the plaintiff's property in line with the city code and building regulations and amount to $1224.02, $2693.46, and $8920, respectively.

The plaintiff, acting as a self-represented party, initiated the present action on March 6, 2012, by filing an application for "discharge or reduction of mechanic's lien[s]."[6] The application to discharge referred to the four separate liens that the defendant had previously placed on the plaintiff's property, pursuant to its authority under the city code, Chapter 159, and §§ 7-148aa and 49-73b. A four day hearing was held by the trial court on May 14, July 25 to 26, and August 1, 2012. Over the course of this hearing, the defendant submitted documentary evidence consisting of the photographs

municipal building, health, housing or safety codes or regulations shall have the right to recover such expenses from the owner of the real estate for which such expenses were incurred.

"(b) The interest of each person in such real estate shall be subject to a lien for the payment of such expenses, which lien shall take precedence over any other encumbrance except municipal tax assessments on such real estate. No such lien shall be valid, unless the municipality, not later than the date thirty days after the date on which such work has ceased, files a certificate of such lien and gives notice to the owner of the real estate in the same manner as provided in section 49-34. Simultaneous with the filing, the municipality shall make reasonable efforts to mail a copy of the certificate by first class mail to the lienholder's current or last-known address. . . .

"(d) Any municipal lien filed pursuant to the provisions of this section may be foreclosed in the same manner as a mortgage. . . .

"(f) Any municipal lien filed pursuant to this section may be discharged or dissolved in the manner provided in sections 49-35a to 49-37, inclusive. . . ."

[6] The plaintiff's application to discharge did not reference a specific statute and was filed on a preprinted form that labeled all four of the liens as "mechanic's lien[s]." The court and the parties properly construed the November, 2005 lien as an anti-blight lien and the remaining three liens as property maintenance liens. The court, however, evaluated its statutory authority to discharge all four liens solely pursuant to § 49-73b, which governs property maintenance liens, concluding that an application to discharge "mechanic's lien[s]" was not available to the plaintiff pursuant to § 7-148aa, which governs anti-blight liens.

taken of the plaintiff's property, memoranda concerning the work performed to clean the property and administrative search warrants that allowed Thomas Kilroy, the Chief Housing Inspector for the defendant, to enter and search the plaintiff's property to determine if it complied with the city code.

The court also heard extensive testimony regarding the three property maintenance liens from both the plaintiff and Kilroy. These witnesses testified about the alleged conditions of the plaintiff's property, the work completed by the defendant's employees and contractors in order to clean the property, and photographs that were taken of the conditions on the property. Kilroy further testified with regard to an investigation of the plaintiff's property that revealed that it was in poor condition. Kilroy also testified about an application for an administrative search warrant, admitted at trial, that was granted and revealed that the condition of the plaintiff's property continued to cause a serious fire hazard both to the plaintiff and to the neighboring homes and emergency responders, due to a dangerous accumulation of rubbish along the outside of the building.

In its August 1, 2012 decision, rendered from the bench, the court granted the plaintiff's application to discharge the second lien, dated January 20, 2010, on the ground that the lien was not filed within a thirty day period as required by § 49-73b.[7] The court denied the plaintiff's application as to the November 19, 2009 and September 1, 2011 liens (the remaining two property maintenance liens), finding that the defendant had established probable cause to sustain the validity of those liens.

The defendant also had submitted a June 25, 2012 motion to dismiss the plaintiff's application to discharge the November, 2005 anti-blight lien, arguing that the

---

[7] See footnote 1 of this opinion.

court lacked subject matter jurisdiction to discharge that type of lien. In issuing its oral decision, the trial court granted the defendant's motion to dismiss, determining that anti-blight liens are not subject to review pursuant to § 49-73b. The court further determined that it could not review an application to discharge "mechanic's lien[s]" pursuant to § 7-148aa, and, therefore, the court lacked subject matter jurisdiction to consider the plaintiff's claim as to the November, 2005 lien. The plaintiff now appeals from the judgment denying his application to discharge the two property maintenance liens and the granting of the defendant's motion to dismiss his application to discharge the anti-blight lien.

I

The plaintiff first claims that the court improperly denied his application to discharge the two property maintenance liens that remain on his property pursuant to § 49-73b. We are not persuaded.

Section 49-73b (f) provides that: "Any municipal lien filed pursuant to this section may be discharged or dissolved in the manner provided in sections 49-35a to 49-37, inclusive." Accordingly, we turn to those sections of the General Statutes that govern the discharge of municipal liens to determine the defendant's burden to sustain the property maintenance liens on the plaintiff's property. "General Statutes § 49-35b (a)[8] provides that

[8] General Statutes § 49-35b provides: "(a) Upon the hearing held on the application or motion set forth in section 49-35a, the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. Any person entitled to notice under section 49-35a may appear, be heard and prove by clear and convincing evidence that the validity of the lien should not be sustained or the amount of the lien claimed is excessive and should be reduced.

"(b) Upon consideration of the facts before it, the court or judge may: (1) Deny the application or motion if probable cause to sustain the validity of the lien is established; or (2) order the lien discharged if (A) probable cause to sustain its validity is not established, or (B) by clear and convincing evidence its invalidity is established; or (3) reduce the amount of the lien

before a lien can be upheld the lienor must establish probable cause to sustain the validity of the lien. Proof of probable cause is not as demanding as proof by a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Citation omitted; internal quotation marks omitted.) *Newtown Associates* v. *Northeast Structures, Inc.*, 15 Conn. App. 633, 636–37, 546 A.2d 310 (1988).

"The standard of proof applicable in proceedings to discharge [municipal] liens is a modest one. . . . It is important to remember that the [lienor] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Thus, we must determine whether the trial court's determination that probable cause exists to sustain the defendant's claim was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 694–95, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007). Once probable cause has been established, the party applying for a discharge of the lien must establish by clear and convincing evidence that the lien is invalid. See *New Image Contractors, LLC* v. *Village at Mariner's Point Ltd. Partnership*, 86 Conn. App. 692, 699, 862 A.2d 832 (2004). We must examine, therefore, whether the defendant demonstrated that probable cause existed to place the two property maintenance liens on the plaintiff's property and, if probable

if the amount is found to be excessive by clear and convincing evidence; or (4) order the lien discharged or reduce the amount of the lien conditioned upon the posting of a bond, with surety, in a sum deemed sufficient by the judge to indemnify the lienor for any damage which may occur by the discharge or the reduction of amount."

cause existed, whether the plaintiff satisfied his burden to prove that the liens were nevertheless invalid.

In this case, the court heard four days of testimony concerning the conditions of the plaintiff's property in addition to reviewing documentary evidence of those conditions. Kilroy testified with respect to the dangerous conditions on the plaintiff's property that led to the determination that the defendant had to intervene to clean the plaintiff's property after he had been fined for failing to do so himself. The court specifically found, on the basis of Kilroy's credible testimony, that the history and conditions of the property going back to 2005 established probable cause for the defendant's actions to clear the blight on the property and to place the liens on the property for the value of that maintenance.[9] The court also found that "the property at issue and as depicted by the photographs evidence that the condition of the property was certainly ripe for the [defendant's] intervention. And the [c]ourt finds that there was probable cause that the property posed a public safety issue."

"[I]t is well established that [i]t is within the province of the trial court, when sitting as the fact finder, to

[9] The plaintiff also contends that his right to due process was violated because the maintenance work performed on his home by the defendant was completed on the basis of an improper ex parte civil search warrant, and, therefore, the property maintenance liens are invalid. The plaintiff's argument is, seemingly, that the warrant to enter his property was improperly granted because there was no statutory authority under which the court could issue it. Section 49-73b, however, which is cited in the defendant's application for an administrative search warrant, clearly gave the defendant authority to remedy the blight on the plaintiff's property in addition to placing a lien on the property for the value of the work performed. Additionally, General Statutes § 29-305 allows for the inspection of buildings and facilities by local fire marshals through the issue of such warrants. See *State v. Burke*, 23 Conn. App. 528, 530 n.2, 531–32, 582 A.2d 915 (1990) (fire marshal inspection statute authorizing issuance of administrative search warrant to conduct periodic annual inspection for fire code violations not unconstitutional), cert. denied, 218 Conn. 906, 588 A.2d 1383 (1991). Thus, we decline to further address this claim.

weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *National Fire Ins. Co. of Hartford* v. *Beaulieu Co., LLC*, 140 Conn. App. 571, 578, 59 A.3d 393 (2013). Accordingly, we defer to the court's finding that Kilroy's credible testimony, in combination with the other evidence presented at the hearing, established probable cause to place the property maintenance liens on the plaintiff's property.

The plaintiff further contends that the photographs submitted into evidence were taken only after the defendant's employees and contractors had entered his property to remove the blight and that they are responsible for the poor conditions on the property. Because, however, there was ample other evidence demonstrating the prior blighted conditions, we are not persuaded that the plaintiff has met his burden to establish by clear and convincing evidence that the challenged property maintenance liens are invalid. We affirm the judgment of the trial court as to the November 19, 2009 and September 1, 2011 liens.[10]

---

[10] The plaintiff argues that the court erred when it considered his application to discharge the property maintenance liens and the anti-blight lien under the same city ordinance, Chapter 159. Although that ordinance is entitled "Property Maintenance," that language is a misnomer, as its terms indicate that it is actually an ordinance that was enacted pursuant to the city's authority granted by § 7-148aa, the anti-blight statute. See footnote 3 of this opinion. While the anti-blight lien was placed on the plaintiff's property in accordance with § 7-148aa and Chapter 159, the ordinance passed pursuant to that statute, the property maintenance liens were placed on the plaintiff's property solely on the basis of the statutory authority granted to

## II

The plaintiff next claims that the trial court improperly dismissed his application to discharge the November, 2005 anti-blight lien on the basis that it lacked subject matter jurisdiction to consider his claim. While the court properly concluded that it did not have the statutory authority to discharge the anti-blight lien pursuant to § 49-73b, we do not agree that the court lacked subject matter jurisdiction to adjudicate the plaintiff's claim pursuant to § 7-148aa.

We begin by setting forth our standard of review. "In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary." (Internal quotation marks omitted.) *Lost Trail, LLC* v. *Weston*, 140 Conn. App. 136, 146, 57 A.3d 905, cert. denied, 308 Conn. 915, 61 A.3d 1102 (2013). "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Citations omitted; internal quotation marks omitted.) *98 Lords Highway, LLC* v. *One Hundred Lords Highway, LLC*, 138 Conn. App. 776, 783, 54 A.3d 232 (2012).

As our Supreme Court explained in *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999), the issue of subject matter jurisdiction is distinct from the authority to act under a particular statute. "Subject matter jurisdiction involves the authority of a court to

the defendant pursuant to § 49-73b. The property maintenance liens were not placed on the property on the basis of any city ordinance, and, therefore, the plaintiff's argument lacks merit.

adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . Therefore, in an effort to ensure that we have adjudicated adequately the plaintiff's claims, we have reframed the issues into distinct claims addressing the [court's] subject matter jurisdiction to adjudicate the claims before it as well as its authority to act pursuant to the relevant statutes." (Citation omitted; internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 261 Conn. 1, 5 n.2, 803 A.2d 879 (2002).

In its memorandum of law in support of its motion to dismiss the anti-blight lien for lack of subject matter jurisdiction, the defendant argued that because § 49-73b does not govern anti-blight liens, the court lacked jurisdiction to discharge the lien pursuant to that statute and that "[t]here are no statutory provisions permitting the court to reduce or discharge anti-blight liens as there are for property maintenance liens." The trial court agreed and also stated that "the application to discharge or reduce a mechanic's lien is not available to the plaintiff under the anti-blight statutes, specifically [§ 7-148aa]. And as such the court, therefore, lacks subject matter jurisdiction over [the] application to discharge that lien . . . ."

"No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended

by the court. . . . [General Statutes §] 52-123 is a reme-
dial statute and therefore must be liberally construed
in favor of those whom the legislature intended to bene-
fit. . . . Our Supreme Court has explained that § 52-
123 replaces the common law rule that deprived courts
of subject matter jurisdiction whenever there was a
misnomer . . . in an original writ, summons or com-
plaint. . . . When a misnomer does not result in preju-
dice to a party, the defect in the writ is circumstantial
error." (Citations omitted; internal quotation marks
omitted.) *Western Boot & Clothing Co.* v. *L'Enfance
Magique, Inc.*, 81 Conn. App. 486, 491–92, 840 A.2d
574, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004).
Although the plaintiff applied to discharge "mechanic's
lien[s]" on his property, as we have previously noted,
the parties and the court properly construed those liens
as three property maintenance liens and one anti-blight
lien, and, thus, the plaintiff's misnomer has not preju-
diced the defendant. Accordingly, the plaintiff's use of
a form entitled "application for discharge or reduction
of mechanic's lien[s]" to apply to discharge an anti-
blight lien did not prevent the court's consideration of
the plaintiff's claim.

Furthermore, we agree with the trial court and the
defendant that § 49-73b does not govern the discharge
of anti-blight liens, but we do not agree that there is
no statutory authority to consider an application to
discharge such a lien because we, instead, conclude
that anti-blight liens are governed by a different statute,
namely, § 7-148aa. If subject matter jurisdiction and a
cause of action pursuant to a particular relevant statute
exist, the court is not lacking in jurisdiction merely
because another irrelevant statute would deprive the
plaintiff of a cause of action. See *Amodio* v. *Amodio*,
supra, 247 Conn. 727–28.

Section 7-148aa provides in relevant part: "Any
unpaid penalty imposed by a municipality pursuant to

the provisions of an ordinance[11] regulating blight . . . shall constitute a lien upon the real estate against which the penalty was imposed from the date of such penalty. Each such lien may be continued, recorded and released *in the manner provided by the general statutes for continuing, recording and releasing property tax liens. . . .*" (Emphasis added.) Thus, the trial court has the authority to release anti-blight liens in the same manner that property tax liens are released. Section 7-148aa, therefore, gives the court subject matter jurisdiction, the power to act, to determine whether it can treat the anti-blight lien as a property tax lien, and if so, whether the anti-blight lien may be discharged as such. This conclusion is consistent with the rule that "every presumption favoring jurisdiction should be indulged"; (internal quotation marks omitted) *Stepney Pond Estates, Ltd.* v. *Monroe,* 260 Conn. 406, 417, 797 A.2d 494 (2002); and is consistent with "the [judicial] policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* 257 Conn. 1, 16, 776 A.2d 1115 (2001).

---

[11] The defendant had enacted an ordinance pursuant to its authority under § 7-148aa, Chapter 159 of the city code, which regulates blight. Chapter 159-7 states in relevant part: "The provisions of this chapter may be enforced by citation, in addition to other remedies, in accordance with § 7-152c of the Connecticut General Statutes. . . ."

Section 7-152c (c) and (d) provide that if a property owner does not contest a citation for violation of the anti-blight ordinance within ten days by demanding a hearing before a citation officer, he will be deemed to have admitted liability, and an assessment and judgment will be entered against him. The statute also allows the property owner an opportunity to appeal such a judgment by a citation officer to the trial court within thirty days of receiving the assessment. General Statutes § 7-152c (g). The defendant followed the procedures set out in § 7-152c for the enforcement of assessments and judgments. We note, however, that the plaintiff neither requested a hearing nor appealed the judgment entered against him to the trial court, instead applying to the court for a discharge of the "mechanic's lien[s]" on his property.

In light of the relevant case law and because trial courts have jurisdiction to interpret statutes and to determine if a cause of action exists pursuant to those statutes, we conclude that the court has subject matter jurisdiction to adjudicate the plaintiff's application to discharge the anti-blight lien pursuant to the applicable statutory provision, § 7-148aa. Whether a cause of action exists pursuant to that provision has yet to be determined by the trial court. Accordingly, we remand the case to the trial court to determine whether the plaintiff can sustain a cause of action pursuant to the statutory authority granted by § 7-148aa to treat the anti-blight lien as a property tax lien.

### III

The plaintiff finally claims that the court improperly prevented him from presenting evidence during the hearing on his application to discharge the liens on his property. The plaintiff specifically contends that the court denied him access to a witness and, for the first time in his reply brief, argues that the court refused to admit signed letters or reports on the basis that they were hearsay. Because the plaintiff has failed to cite relevant case law and apply those principles to the issues raised in this appeal, we decline to review these claims.

"It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not

merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163–64, 20 A.3d 702 (2011).

"Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . Self-represented parties are not afforded a lesser standard of compliance, and [a]lthough we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law." (Internal quotation marks omitted.) *In re Emile L.*, 126 Conn. App. 283, 285 n.3, 11 A.3d 1117 (2011). The plaintiff has not demonstrated, aside from unsupported assertions, how the trial court's actions were improper. Accordingly, we conclude that the plaintiff has abandoned these issues as the result of an inadequate brief.

The judgment is reversed only as to the dismissal of the application to discharge the anti-blight lien and the case is remanded with direction to reconsider the plaintiff's application to discharge that lien; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.