******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STONES TRAIL, LLC *v.* TOWN OF WESTON
## (AC 38078)

Sheldon, Mullins and Harper, Js.

*Syllabus*

The plaintiff developer brought an action seeking to recover damages from the defendant town as a result of its alleged inverse condemnation or regulatory taking of certain of the plaintiff's real property. The plaintiff also alleged various violations of its federal constitutional rights. The plaintiff had purchased the property with the purpose of dividing it into six buildable lots. Before the closing of the purchase, the plaintiff submitted three maps of the property to the town. The town's attorney determined that the property depicted on one of the maps was not a subdivision, and that map was stamped accordingly and filed in the town land records. Thereafter, the other two maps, which altered the lot lines of the property to depict six potentially developable lots, were stamped with the identical language and filed in the land records. The plaintiff completed the purchase of the property, in reliance on the review of the lots by town officials and the stamped notation. The plaintiff did not seek or obtain approval from the town's Planning and Zoning Commission for the subdivision of the lots, believing that such approval was not necessary because the town's prior procedure had been to place the same stamped language on maps when it was determined that subdivision approval was not needed. Thereafter, the plaintiff was informed by several town officials that it had to seek subdivision approval from the commission prior to subdividing the properties. The town's attorneys rejected the plaintiff's requests to reconsider that determination and urged the plaintiff to apply to the commission for subdivision approval. The town's zoning enforcement officer also denied the plaintiff's request for a certificate of zoning compliance, which was upheld by the town's Zoning Board of Appeals. Prior to trial, the town filed four motions to dismiss the plaintiff's action on the ground that its claims were not ripe and that the court therefore lacked subject matter jurisdiction. Those motions were denied. The jury returned a verdict in the plaintiff's favor on its constitutional claims, after which the trial court, sua sponte, set aside the verdict and dismissed the action for lack of subject matter jurisdiction. In dismissing the action, the court relied on facts that were developed throughout the proceedings and at trial in determining that the plaintiff's claims were not ripe because the plaintiff had failed to obtain a final decision from the commission on its subdivision proposal. The court issued a revised memorandum of decision in which it deleted the references to the doctrine of exhaustion of administrative remedies that had been included in the initial memorandum of decision. The court determined that those references were dicta and removed them to avoid ambiguity or confusion as to the basis of its initial decision. On appeal, the plaintiff claimed, inter alia**,** that the principle of finality of judgments superseded the reconsideration of the town's claims of lack of subject matter jurisdiction, and that the trial court was precluded by the law of the case doctrine from reconsidering the four pretrial rulings that rejected the town's ripeness claims. *Held*:

1. The principle of the finality of judgments did not bar the trial court from reconsidering the ripeness of the plaintiff's claims and whether it had subject matter jurisdiction over those claims, as the court's reconsideration of its jurisdiction was not a collateral attack on a judgment rendered in another proceeding, reconsideration was necessary on the basis of facts that were developed at trial and were unknown to the court when it previously considered the issue of ripeness, and reconsideration was important so as to prevent a miscarriage of justice to ensure that the court had jurisdiction under the circumstances here, in which the plaintiff did not comply with the town's zoning regulations, but, rather, sought to circumvent those procedures.

2. Contrary to the plaintiff's claim, the law of the case doctrine did not bar the trial court from revisiting the issue of ripeness and, thus, its jurisdiction; although the issue of ripeness had been considered four

times previously, the law of the case doctrine does not mandate that a court adhere to all rulings made at prior stages in the proceedings, and the trial court here explained that it reconsidered the issue of ripeness on the basis of facts that were developed at trial.

3. The trial court properly determined that although the plaintiff had vested rights in the property at issue, it did not have vested rights in the configuration of the property as it sought to reconfigure it, nor could it have acquired such vested rights without having sought approval of its reconfiguration in accordance with the town's established protocol and procedures; the zoning enforcement officer's denial of the plaintiff's application for a certificate of zoning compliance was a conditional decision that did not vest the plaintiff with rights to the property at issue, the zoning officer having refused to issue the certificate before the plaintiff presented its application to and received subdivision approval from the town's commission, and having merely referred the initial determination of the subdivision issue and the validity of the property lots to the administrative body charged with deciding those issues.

4. The plaintiff's claim that the trial court improperly relied on a prior decision of this court in ruling that it lacked subject matter jurisdiction was unavailing; the trial court's jurisdictional inquiry was based on the factual record developed throughout the proceedings up until the jury's verdict, and it was clear that in assessing whether it had subject matter jurisdiction, the court considered factual differences between the claims here and in the prior decision of this court.

5. The plaintiff could not prevail on its claim that the trial court improperly rejected its assertion that it would have been futile to apply to the commission for subdivision approval and, thus, that it should have been excused from having to do so; the plaintiff's obstacles to obtaining subdivision approval were self-imposed, as the plaintiff had been directed by every town representative with whom it spoke about the matter to seek approval from the commission, but never did so, and the plaintiff's principal testified that he did not seek subdivision approval because it was a time-consuming and expensive process, and because his attorney told him that it might impair the collateral to his mortgage loan or be viewed as an admission that the lot line adjustments were invalid.

6. Notwithstanding the plaintiff's claims to the contrary, the trial court's ripeness review applied to the plaintiff's claims of alleged violations of its constitutional rights, as those constitutional claims were inextricably intertwined with the plaintiff's takings and inverse condemnation claims, the allegations in the complaint underlying the takings and inverse condemnation claims having mirrored those set forth in the constitutional claims.

7. The plaintiff could not prevail on its claim that the trial court materially altered its decision when it filed a revised memorandum of decision that omitted references in the original decision to the exhaustion of administrative remedies doctrine; the court's original decision mentioned that doctrine only in passing and without discussion of how it would apply to the present case, that doctrine did not form the basis of the court's decision, and the lack of any reference to that doctrine in the revised memorandum of decision served to dispel any ambiguity or confusion concerning the basis of the court's original decision.

Argued March 13—officially released July 18, 2017

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. Taggart D. Adams, judge trial referee [motion to dismiss]; Hon. Edward R. Karazin, Jr., judge trial referee, [motions to dismiss]; Lee, J.)

*Procedural History*

Action to recover damages for, inter alia, the alleged violation of certain of the plaintiff's constitutional rights, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Karazin, J.*, denied the defendant's motion to dismiss; thereafter, the court, *Hon. Taggart D. Adams*,

judge trial referee, denied the defendant's motion to dismiss; subsequently, the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, denied the defendant's motions to dismiss; thereafter, the matter was tried to the jury before *Lee, J.*; verdict for the plaintiff; subsequently, the court, *Lee, J.*, denied the defendant's motion for judgment notwithstanding the verdict and rendered judgment in accordance with the verdict; thereafter, the court, *Lee, J.*, set aside the verdict and dismissed the action for lack of subject matter jurisdiction, and the plaintiff appealed to this court; subsequently, the court, *Lee, J.*, issued an articulation of its decision. *Affirmed.*

*Robert A. Fuller*, with whom was *Paul J. Pacifico*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom was *Patricia C. Sullivan*, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiff, Stones Trail, LLC, brought this action against the defendant, the town of Weston (town), arising from its attempts to develop certain real property located in Weston, alleging, inter alia, denial of equal protection of the law in violation of 42 U.S.C. § 1983; denial of procedural due process in violation of 42 U.S.C. § 1983; inverse condemnation or regulatory taking of land in violation of 42 U.S.C. § 1983; and inverse condemnation or regulatory taking of land in violation of the fifth amendment to the United States constitution[1] and article first, § 11, of the state constitution.[2] The plaintiff appeals from the trial court's dismissal of its claims on the basis of its determination that the lack of a final decision from the town's Planning and Zoning Commission (commission) rendered them unripe for adjudication. We affirm the judgment of the trial court.[3]

The trial court set forth the following relevant facts and procedural history. "[Robert] Walpuck, [doing business as the plaintiff], Stones Trail, LLC, entered into a contract to purchase the property on Ladder Hill Road in Weston . . . (the property) on March 18, 1998. The property was composed of four smaller lots varying from one to two acres in size and one large lot (the Great Gate lot), with the total property aggregating about seventeen acres. The property was located in a two acre zone. Prior to closing the purchase, [the plaintiff] commissioned a title report, which was forwarded to the town. [The plaintiff] submitted three maps of the property to the town. Map #3447 depicted the property as it had appeared since 1937, consisting of four small lots and one large lot. On September 18, 1998, Town Attorney Christopher Jarboe wrote to the code enforcement officer that the property depicted on map #3447 was not a subdivision and should be stamped accordingly and filed on the land records. On the same day, the town engineer and [the] town code enforcement officer stamped and signed map #3447 with a stamp reading as follows: 'The Town Engineer and Code Enforcement Office hereby attest to the fact that this plan is neither a subdivision nor a resubdivision as defined by the General Statutes of Connecticut and the Town of Weston and may be recorded without prior approval of the Weston Planning and Zoning Commission.' Approximately a week later, on September 24, 1998, map #3448, which altered the property in that the Great Gate lot on map #3447 was divided into two, yielding a total of six lots, was filed and stamped with the same language. Map #3449 was also filed and stamped with the same language on September 24, 1998. Map #3449 substantially altered the lots so that the four smaller lots each slightly exceeded two acres, giving the developer six potentially developable lots. Map #3448 and map #3449 were not stamped and filed on

the Weston Land Records until roughly a week after the date of . . . Jarboe's letter. . . .

"Walpuck testified that he felt he did not need subdivision approval and that he could achieve his objective of six buildable lots by lot line adjustments. According to . . . Walpuck, the procedure in Weston since 1991 was to place the aforementioned stamped language on a map when it was determined that no subdivision approval was needed. This procedure apparently was recommended by Town Counsel Harry Hefferan in 1991, who wrote, '[i]n the event a map is requested to be filed without subdivision or resubdivision action by the Planning and Zoning Commission acting in its planning function, the same shall be presented by its proposed filer to the town engineer and to the code enforcement officer for their examination. If those officers determine that it is unnecessary to appear before the Planning and Zoning Commission because there is no subdivision or resubdivision as so defined, they shall so indicate on the face of the map and the town clerk may accept for filing such map.' . . .

"Walpuck testified that, in reliance on the review of the lots by town officials and the stamped notation on map #3449, in October, 1998, the plaintiff completed the purchase of the property, having obtained a $1.1 million mortgage from Ridgefield Bank. The mortgage agreement included a provision allowing for the severance or release of individual lots upon payment of an allocated amount. . . .

"Subsequently, on February 14, 2000, special counsel for the commission, Attorney Barry Hawkins, advised the plaintiff's attorney by letter that he had 'determined that under applicable Connecticut law and the Weston Planning and Zoning Regulations and Subdivision By-Laws . . . Walpuck must seek subdivision approval from the Weston Planning and Zoning Commission prior to dividing his properties situated at 10 Ladder Hill Road and 96 Georgetown Road in Weston . . . .' Hawkins explained that the plaintiff's 'extensive and aggressive lot line adjustments' appeared to be an attempt to 'circumvent compliance with [the town's] Subdivision By-Laws.' Hawkins also notified the plaintiff that he had advised the town's zoning enforcement and building officials not to issue zoning or building permits to the plaintiff, should it attempt to develop the lots. Hawkins advised the plaintiff that it should apply to the commission for subdivision approval, and that '[t]he Planning and Zoning Commission is willing to work with . . . Walpuck to accomplish reasonably the safe and proper development of his properties in accordance with applicable subdivision statutes and regulations.'

"On March 22, 2000, Hawkins wrote to the town's tax assessor, advising that the lot line adjustments reflected on the recorded maps did not create additional

building lots, and that, therefore, the plaintiff's property should be taxed as one parcel of land. In May, 2000, the tax assessor revised the tax assessment map so that the plaintiff's property was taxed as a single lot. This did not affect the existing lot lines, however.

"In 2002, [the plaintiff] was in default on its mortgage. The bank threatened foreclosure, and . . . Walpuck sought permission to sell one of the reconfigured lots to generate cash to cure the default. However, the Ridgefield Bank refused to release any of the six lots from the plaintiff's mortgage because of, among other things, uncertainty about the legitimacy of the six lot configuration shown on map #3449. Subsequently, the bank commenced a mortgage foreclosure action against the plaintiff in February, 2002.

"Upon receiving Hawkins' letter, the plaintiff did not seek subdivision approval from the commission or appeal the position of the letter to the Zoning Board of Appeals. Instead, in 2004 and 2005, the plaintiff made requests to town attorneys Kenneth Bernhard and Patricia C. Sullivan to reconsider the town's position, based on the plaintiff's contention that the parcels did not constitute a subdivision under General Statutes § 8-18. The town attorneys rejected these requests and urged [the] plaintiff to apply for subdivision approval. Instead, [the] plaintiff commenced the present action in [November], 2005. . . . Walpuck testified that he did not apply for subdivision approval because it was a time-consuming and expensive process, and because his lawyer told him that it might impair the collateral to his loan, or, 'since it could be viewed' as a possible admission that the lot line adjustments were invalid.

"In April, 2006, subsequent to the commencement of this action, the plaintiff filed an informal, handwritten application with town Zoning Enforcement Officer Robert Turner for a certificate of zoning compliance for parcel D on map #3449. Turner denied the application, noting that he lacked authority to grant a certificate of zoning compliance for anything other than the smaller, preexisting lot called the 'Honor Leeming Lot' on an older map of the property in its previous, nonconforming configuration. Turner further stated that the proposed lot line arrangements shown on map #3449 'would have to be reviewed before permission can be given.' Turner continued, '[a]s has been explained to you on a number of prior occasions, the way to legitimately divide the property purported to be owned by [the plaintiff] adjacent to the Honor Leeming parcel, is by filing a subdivision application with the Planning and Zoning Commission.'

"The plaintiff appealed Turner's decision to the Zoning Board of Appeals, which upheld Turner's decision. The plaintiff then appealed to the Superior Court, which dismissed the action for lack of aggrievement because the plaintiff had lost the property to foreclosure in

August, 2006. See *Stones Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-06-4010003-S, 2008 WL 2168967 (May 6, 2008) (*J. Downey, J.*).

"Walpuck also testified that the subsequent owner of the property in question successfully applied to the commission for subdivision approval. The subsequent owner received formal subdivision approval for four lots, which were larger than those proposed by . . . Walpuck, and which allowed the construction of considerably larger houses."

The plaintiff commenced this action in November, 2005, by way of an eight count complaint. Of those eight counts, the following proceeded to trial: denial of equal protection of the law in violation of 42 U.S.C. § 1983; denial of procedural due process in violation of 42 U.S.C. § 1983; inverse condemnation or regulatory taking of land in violation of 42 U.S.C. § 1983; and inverse condemnation or regulatory taking of land in violation of the fifth amendment to the United States constitution and article first, § 11, of the state constitution.[4] The plaintiff's three § 1983 claims were tried to the jury, and its federal and state constitutional claims were simultaneously tried to the court. The jury returned a verdict in favor of the plaintiff on all three § 1983 counts and awarded damages to the plaintiff in the amount of $5,000,000.

Following trial, the court, sua sponte, raised the issue of whether the plaintiff's claims were ripe for adjudication, and thus whether it had jurisdiction over them. In so doing, it explained: "Over the course of nine and one-half years, this case has amassed an extensive procedural history. Of relevance to the present discussion are the defendant town's motions, on four separate occasions before trial, to dismiss the plaintiff's claims for lack of subject matter jurisdiction, arguing that [the] plaintiff had failed to apply to the commission for subdivision approval, that its claims were unripe for adjudication, and any appealed act of the town lacked finality. On each occasion, the [town's] motion was denied. See *Stones Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4007138-S, 2014 WL 6765409 (October 23, 2014) (*Hon. Edward R. Karazin, Jr.*, judge trial referee); *Stones Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4007138-S, 2013 WL 4046688 (July 19, 2013) (*Hon. Edward R. Karazin, Jr.*, judge trial referee); *Stones Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4007138-S, 2011 WL 6976565 (December 16, 2011) (*Hon. Taggart D. Adams*, judge trial referee); *Stones Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4007138-S, 2007 WL 2039086 (June 25, 2007) (*Hon. Edward R. Karazin, Jr.*, judge trial

referee). Among the parties' posttrial motions is the town's fifth motion to dismiss, this time premised on its argument that the plaintiff's § 1983 taking[s] claims were unripe when the jury rendered its verdict because the court had yet to render a decision on the plaintiff's state law takings claim.

"[The town's] first and second motions to dismiss were decided prior to the Appellate Court's decision on January 15, 2013, in *Lost Trail, LLC* v. *Weston*, [140 Conn. App. 136, 57 A.3d 905, cert. denied, 308 Conn. 915, 61 A.3d 1102 (2013)]. That case, as more fully explained [herein], was essentially a companion case to the present action, involving the identical stamps by Weston officials and correspondence with attorneys acting on behalf of the town. . . . Walpuck, the principal in both Stones Trail, LLC, and Lost Trail, LLC, filed both lawsuits in December, 2005, and subsequently lost both properties to foreclosure. In the *Lost Trail, LLC* litigation, the Appellate Court and federal courts agreed with the jurisdictional challenges of the defendant town and dismissed each of [the] plaintiff's claims due to its failure to apply to the commission for subdivision approval. See id.; *Lost Trail, LLC* v. *Weston*, 485 F. Supp. 2d 59 (D. Conn. 2007), aff'd, *Lost Trail, LLC* v. *Weston*, 289 Fed. Appx. 443 (2d Cir. 2008).

"The town based its third and fourth pretrial motions to dismiss on the Appellate Court and federal court decisions in *Lost Trail, LLC*, but the [trial] court, without the benefit of the full factual record which has been developed at trial, noted differences between *Lost Trail, LLC*, and the facts as then presented to it in the instant case, and denied both motions. See *Stones Trail, LLC* v. *Weston*, supra, 2014 WL 6765409; *Stones Trail, LLC* v. *Weston*, supra, 2013 WL 4046688.

"As explained [previously], in its posttrial motion to dismiss, the [town] did not reassert the arguments raised in its previous motions to dismiss. The court, however, in light of the facts developed at trial, and the Appellate Court and federal court decisions in *Lost Trail, LLC*, elected to raise and reconsider, sua sponte, the issue of the court's subject matter jurisdiction."

On June 9, 2015, the court issued a memorandum of decision, in which it set aside the jury's verdict and dismissed all of the plaintiff's claims for lack of subject matter jurisdiction on the ground that its claims were not ripe because it had failed to obtain a final decision from the commission on its subdivision proposal. In its decision, the court specifically discussed Connecticut's law requiring that a plaintiff must establish the finality of the determination made in his case before he is entitled to judicial review of his regulatory takings claim. The court then proceeded in its memorandum of decision to separately discuss the federal law requirement of ripeness, as set forth in *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473

U.S. 172, 186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), which provides that a takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." The court further noted in its discussion of the federal ripeness requirement that (1) a plaintiff is excused from obtaining a final decision if it would have been futile to pursue such a course, and (2) although the ripeness requirement discussed in *Williamson* was announced in a takings context, the requirement had been extended to equal protection and due process claims asserted in land use cases. Finally, the court discussed *Lost Trail, LLC*, and concluded that, "[g]iven the substantial conformity of the facts between the present case and *Lost Trail, LLC* . . . the legal outcome should conform as well." The court ultimately determined that, because the plaintiff had both "failed to prove that a final decision was rendered by any administrative body charged with allegedly depriving [the] plaintiff of its rights," or "that it would have been futile to pursue available administrative remedies," it was necessary to dismiss the plaintiff's claims for lack of subject matter jurisdiction. Judgment entered in accordance with the trial court's June 9, 2015 memorandum of decision on that same date. On June 19, 2015, the plaintiff timely filed this appeal.

Subsequently, the town filed a motion for articulation, seeking clarification of the basis for the court's June 9, 2015 decision. Specifically, the town argued that clarification was necessary because, in the court's June 9, 2015 memorandum of decision, the court had made several references to the exhaustion of administrative remedies doctrine, which need not be satisfied before bringing a § 1983 claim, thereby creating an ambiguity as to whether the trial court had applied that doctrine. In particular, the town noted that the trial court had included a reference to the exhaustion of administrative remedies doctrine in the conclusion of its memorandum of decision, stating that it was dismissing the plaintiff's federal takings and § 1983 claims "for lack of ripeness due to the plaintiff's failure to exhaust administrative remedies." The town therefore sought in its motion for articulation to have the trial court clarify that (1) the sole basis for its dismissal of the plaintiff's federal takings and § 1983 claims was lack of ripeness under *Williamson*, (2) the futility exception is the exception to the *Williamson* ripeness test and not the futility exception to the exhaustion of administrative remedies doctrine, and (3) the plaintiff did not satisfy the futility exception with respect to its § 1983 claims.

The court granted the town's motion over the plaintiff's objection, and noted that "it is clear that the court rendered its decision on the § 1983 claims based on its finding that the lack of a final (or any) decision from the [commission] rendered the appeal unripe. Any refer-

ences to exhaustion of administrative remedies were unnecessary dicta and will be removed to avoid any ambiguity or confusion as to the basis of the court's decision." On October 19, 2015, the court issued a revised memorandum of decision consistent with its articulation.

On appeal, the plaintiff claims that (1) "the concept of finality of judgments supersedes reconsideration of claims of lack of subject matter jurisdiction based on ripeness for review under the facts of this case after four pretrial motions denied that claim"; (2) the four pretrial rulings rejecting the town's ripeness claims constituted the law of the case by which the court was bound, and thus it was precluded from reconsidering those rulings after the jury returned its verdict; (3) it had vested property rights to the six lots at issue in this case, and thus it was not required to apply to, nor was a decision on its application required from, the commission, to establish finality; (4) this court's decision in *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 136, is distinguishable from the present case, and thus the trial court improperly relied upon it; (5) the futility exception to ripeness applies to this case; (6) ripeness does not apply to its § 1983 claims alleging equal protection and procedural due process violations; and (7) the court's articulation improperly altered the basis for its decision.[5] The first two of the plaintiff's claims concern the propriety of the trial court's decision, sua sponte, to reconsider the issue of subject matter jurisdiction. The remaining claims go to the merits of the trial court's decision that the plaintiff's claims were unripe, and thus that it lacked subject matter jurisdiction over them.

Because the trial court devoted a great deal of attention to, and relied in large part upon, *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 136, we set forth the trial court's general description of the pertinent factual and procedural history, and legal rulings, in that case. The trial court recounted: "*Lost Trail, LLC* v. *Weston*, supra, 136, was essentially a companion case to the present case, and involved nearly identical facts, including, *inter alia*, the purchase of land on Georgetown Road in Weston in 1997 intended for development by [a limited liability company] controlled by . . . Walpuck; the attempt to create additional buildable lots through the adjustment of lot lines; and the filing of maps showing the existing and proposed configuration in the summer of 1998. The Lost Trail maps received the same stamped language from town officials one month before the Stones Trail maps. The letter of February 14, 2000, from special counsel Hawkins, advising that an application to the commission for subdivision approval was required, referred to both the Lost Trail and Stones Trail properties in its 're' line, and the letter made no distinction between them. As in the present case, rather than pursue subdivision approval from the

commission, counsel for Lost Trail argued with the town attorneys, the property went into default and ultimately foreclosure. Lost Trail, LLC, commenced an action against the town in the same month as did Stones Trail, LLC, for the same alleged violations, i.e., denial of equal protection, denial of due process, and a regulatory taking, all in violation of 42 U.S.C. § 1983, and regulatory takings claims premised on the United States and Connecticut constitutions.

"The legal action proceeded somewhat more quickly in *Lost Trail, LLC*, than in *Stones Trail, LLC*. Upon removal to federal court, the . . . town . . . successfully moved to dismiss Lost Trail's § 1983 claims for lack of ripeness. The District Court's summary of Lost Trail, LLC's, arguments, namely, that it was exempt from the subdivision approval process and that it would have been futile to submit permit applications under the circumstances, underscores *Lost Trail, LLC,*'s similarity to the present case. The court noted that Lost Trail relies heavily on the alleged 1998 decision of the former Town Attorney and Zoning Enforcement Officer, as noted on [the stamps on] map #3443 and map #3444, that changes to Lost Trail's property converting two lots . . . to four lots did not require subdivision approval. . . . Lost Trail asserts that in 2000 [by way of special counsel Hawkins' letter] the Town reversed this decision and now considers the four lots invalid because they lack subdivision approval from the Planning and Zoning Commission. Lost Trail argues that this reversal, coupled with specific instructions to various town officials not to issue permits until a proper subdivision application is processed, sufficiently meets the finality test in the first part of the *Williamson* decision and places this case squarely under the futility exception to the finality rule. . . . *Lost Trail, LLC* v. *Weston*, supra, 485 F. Supp. 2d 65.

"The court disagreed, holding that Lost Trail has failed to demonstrate that the Town has rendered a final decision as to how subdivision or zoning regulations will be applied to Lost Trail's property and whether the Town will prohibit all economically beneficial uses. That the Town refuses to recognize maps, recorded by Lost Trail and depicting four lots, without formal consideration by the Planning and Zoning Commission through the subdivision approval process does not constitute a final decision as to the outcome of that process. [Id., 65]. Nor does the Town's alleged prospective refusal to issue zoning or building permits until subdivision approval is obtained for the four lots demonstrate either a final decision or futility exempting Lost Trail from the final decision requirement. Lost Trail's futility argument hinges largely on what it deems a purely legal question, namely whether the [Georgetown] lots exist as a matter of law as [four] separate parcels under Connecticut statutory law and case law. . . . Regardless of the merit to Lost Trail's legal argu-

ment, it has never been presented to the Planning and Zoning Commission for its formal consideration and thus Lost Trail has not obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property. . . . Id., 66. The District Court dismissed the plaintiff's equal protection and due process claims along with its takings claim, having noted that '[the plaintiff's claims] asserting denial of equal protection, denial of substantive and procedural due process, and inverse condemnation or regulatory taking of plaintiff's land in violation of the Fifth Amendment are . . . all tested under the first prong of the *Williamson* test for ripeness.' [Id., 64]. On appeal, the United States Court of Appeals for the Second Circuit affirmed, by summary order, the District Court's dismissal of all of the plaintiff's federal claims. *Lost Trail, LLC* v. *Weston*, 289 Fed. Appx. 443 (2d Cir. 2008).

"The District Court remanded the state law counts to the Superior Court. [The] [d]efendant town filed motions to dismiss the plaintiff's three remaining state law claims, which were granted on the ground that the plaintiff had failed to obtain a final decision from the commission and to exhaust available administrative remedies prior to seeking declaratory relief. See *Lost Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-5000500-S, 2009 WL 1532642 (May 8, 2009) (*Pavia, J.*); *Lost Trail, LLC* v. *Weston*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-5000500-S, 2011 WL 2739436 (June 9, 2011) (*Hon. Alfred J. Jennings, Jr.*, judge trial referee).

"On appeal, the Appellate Court first noted Lost Trail's argument that its division of the . . . property plainly did not constitute a subdivision under § 8-18; thus, as a matter of law, the commission had no jurisdiction over the matter. In Lost Trail's view, [t]here was nothing for the . . . [c]ommission to decide as to either (1) whether subdivision approval was necessary for the property . . . or (2) to review and approve (or deny) a subdivision application. Because this issue was beyond the commission's purview, Lost Trail asserts that the finality requirement is simply beside the point. Lost Trail additionally argues that, even if it was required to seek the commission's consent, the town effectively approved the division of the two preexisting parcels into four separate lots in August, 1998, when the final maps were stamped and signed by town officials and recorded in the town land records. Lost Trail characterizes the town's subsequent actions as a revocation of this apparent approval, which revocation inflicted an immediate injury ripe for adjudication. . . . *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 144–45.

"The Appellate Court disagreed, holding that [t]he

rationale for requiring a final and authoritative determination from local administrators as a prerequisite to asserting a regulatory takings claim is well illustrated here. Although Hawkins suggested that, in his opinion, Lost Trail's division of the Georgetown Road property created a subdivision, he did not have the authority to speak for or to bind the commission. Indeed, he recommended that Lost Trail apply for subdivision approval and stated that the commission was willing to work with Lost Trail to ensure the safe and proper development of the Georgetown Road property. This correspondence cannot be considered a definitive position on the issue from an authoritative initial decision-maker. . . . Lost Trail tries to circumvent the finality requirement by arguing that its use of the subject property so obviously did not constitute a subdivision that the commission's involvement was gratuitous. Strength of unilateral conviction is not, however, a substitute for a final administrative decision. As the town correctly points out, property owners cannot be their own arbiters of whether the commission has the authority to act. . . . Furthermore, by refusing to engage the commission in the zoning approval process, Lost Trail eliminated the possibility that this matter could be resolved by local political choices and settlements. . . . Lost Trail's prediction of futility turned out to be wrong—in January, 2011, the commission agreed with Lost Trail and disavowed Hawkins' position. . . . Id., 148–49. If Lost Trail had sought the opinion of the commission when Hawkins first suggested that Lost Trail's use of its property created a subdivision, these issues could have been settled—that is, the commission would have been given the opportunity to adopt or to correct Hawkins' position. If the commission, as constituted twelve years ago, had decided these issues favorably to Lost Trail, Lost Trail could have then sought building permits and zoning certification. Had it decided the issue adverse to Lost Trail, Lost Trail presumably could have appealed years ago. Having failed to do so, it cannot now challenge the town's actions in court as an unconstitutional taking. Id., 150–51.

"Finally, the Appellate Court addressed Lost Trail's argument that it was exempted from applying to the commission for subdivision approval by the futility exception, specifically, that once Hawkins informed zoning and building officials that, in his opinion, Lost Trail had illegally subdivided its property, it was pointless to apply for zoning certificates and building permits from those officials because § 8-3 (f) precludes a building official from issuing a building permit in the absence of a zoning permit or certificate in writing from the zoning enforcement official that the proposal is consistent with zoning regulations. Lost Trail additionally contends that an application for zoning permits, without first engaging the commission in the zoning approval process, would have been futile because the town did

not recognize the attempted division of its property into four lots. Id., 151.

"The court rejected these arguments, holding that [h]aving already rejected Lost Trail's reasons for opting out of the planning and zoning review process, we hold that its futility argument must also fail. Although a property owner need not pursue patently fruitless measures to satisfy the finality doctrine . . . it cannot claim futility by setting up its own obstacles. Put simply, Lost Trail claims that it would have been futile to pursue step two of an administrative process, applying for zoning and building permits, because it refused to engage in step one, pursuing the opinion of the commission as to whether a subdivision had been created. . . . Id., 151–52. Moreover, [i]t is futile to seek a[n] [administrative] remedy only when such action *could not* result in a favorable decision and *invariably* would result in further judicial proceedings. . . . It is clear that the commission could have determined that Lost Trail had not created a subdivision—as it later did—or approved an application to subdivide its property, clearing the way for zoning and building permits to be issued. Thus, we reject Lost Trail's attempt to bootstrap its way to futility. . . . Id., 152. In rejecting Lost Trail's futility argument, the court also noted that '[i]n its reply brief, Lost Trail advances its futility argument by delineating its interactions with several town officials regarding the status of its . . . property: the town attorney, the zoning enforcement officer, and the tax assessor. None of these officials was a substitute for the commission.' Id., 152 n.11; see also *Murphy* v. *New Milford Zoning Commission*, 402 F.3d 342, 352–54 (2d Cir. 2005) (holding that a plaintiff's land use claims were not ripened by the town zoning enforcement officer's issuance of a cease and desist order where the plaintiff could have pursued a variance application to the Zoning Board of Appeals)." (Emphasis in original; internal quotation marks omitted.)

Against this backdrop, the trial court stated: "Given the substantial conformity of the facts between the present case and *Lost Trail, LLC*, supra, 140 Conn. App. 136, the court believes that the legal outcome should conform as well. Of course, the court is bound to follow the Appellate Court's decision in *Lost Trail, LLC*, and it is persuaded by the District Court's decision." The court further noted that the doctrine of collateral estoppel might have precluded some of the claims that had been decided in *Lost Trail, LLC*, but did not engage in an estoppel analysis, since neither of the parties had argued or briefed it. The court then went on to consider its jurisdiction in the present case, which is the issue before us on appeal.

Generally, "[t]he standard of review of a challenge to a court's granting of a motion to dismiss is well established. In an appeal from the granting of a motion

to dismiss on the ground of subject matter jurisdiction, this court's review is plenary. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bloom* v. *Miklovich*, 111 Conn. App. 323, 335–36, 958 A.2d 1283 (2008). With the foregoing in mind, we address each of the plaintiff's claims in turn.

I

The plaintiff first claims that the principle of finality of judgments barred the trial court's reconsideration of whether it had subject matter jurisdiction over the plaintiff's claims under the circumstances of this case because the issue of ripeness had been determined four times prior to trial and the case had gone to verdict. We are not persuaded.

"[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 177–78, 55 A.3d 588 (2012), cert. granted on other grounds, 307 Conn. 947, 60 A.3d 960 (2013) (appeal withdrawn May 28, 2013).

Nevertheless, "even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. . . . Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Internal quotation marks omitted.) *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 855, 74 A.3d 1192 (2013).

"Litigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the

prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 468 A.2d 1230 (1983); *Vogel* v. *Vogel*, [178 Conn. 358, 362–63, 422 A.2d 271 (1979)]; *Monroe* v. *Monroe*, 177 Conn. 173, 413 A.2d 819, [cert. denied], 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); 1 Restatement (Second), Judgments § 12 [(2012)]." (Internal quotation marks omitted.) *Morris* v. *Irwin*, 4 Conn. App. 431, 434, 494 A.2d 626 (1985).

"We have strongly disfavored collateral attacks upon judgments because such belated litigation undermines the important principle of finality. . . . The law aims to invest judicial transactions with the utmost permanency consistent with justice . . . . Public policy requests that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown." (Citations omitted; internal quotation marks omitted.) *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 512, 545 A.2d 579 (1988). "A collateral attack is an attack upon a judgment, decree or order offered *in an action or proceeding other than that in which it was obtained*, in support of the contentions of an adversary in the action or proceeding . . . ." Id., 511–12.

Here, the court's reconsideration of its jurisdiction was not a collateral attack on a judgment rendered in another proceeding. Although the parties had opportunities to argue the issue of ripeness prior to trial, and the court considered it four previous times, and the case had been tried and the jury's verdict accepted, the court determined that reconsideration was necessary based upon facts that were developed at trial and were unknown to the court when previously considering the issue of ripeness. Although it may seem unfair for the trial court to have revisited the issue again, after trial and after the jury returned a sizeable verdict in the plaintiff's favor, it is, as noted, important to prevent a miscarriage of justice, to ensure that the court did, in fact, have jurisdiction over the plaintiff's claims, particularly under these circumstances, where the plaintiff did not comply with municipal procedures to ensure compliance with local zoning regulations, but, instead, sought to circumvent those procedures. We thus conclude that the principle of the finality of judgments did not bar the trial court from reconsidering the ripeness of the plaintiff's claims and its jurisdiction over them.

II

The plaintiff next claims that the trial court was barred by the law of the case doctrine from reconsidering the issue of ripeness when it had already been considered four times previously during the proceedings. We disagree.

"The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 169 Conn. App. 243, 263, 149 A.3d 198, cert. denied, 324 Conn. 903, 151 A.3d 1289 (2016). "[T]he application of the law of the case doctrine involves a question of law, over which our review is plenary." (Internal quotation marks omitted.) *Glastonbury* v. *Sakon*, 172 Conn. App. 646, 657,     A.3d     (2017).

Here, the trial court explained that it was reconsidering the issue of ripeness, and, thus, its jurisdiction, based upon facts that were developed at trial. In light of that development, and because the law of the case doctrine does not mandate that a court adhere to all rulings made at earlier stages in the proceedings, we cannot conclude that it was improper for the court to revisit the issue of ripeness in this case.

III

The plaintiff next claims that its rights in the lots at issue in this case were vested, and thus that it was not required to apply to, nor was a decision required from, the commission, to establish finality for the purposes of establishing the ripeness of its claims. The plaintiff claims that because it had "vested property rights" in the six lots at issue in this action, Turner, as the zoning enforcement officer, was the initial decision maker whose decision was required to establish the ripeness of the plaintiff's claims. The plaintiff claims that Turner's decision denying the plaintiff's application on the basis that the plaintiff was required to seek subdivision approval from the commission constituted a final decision revoking the plaintiff's vested rights in the six lots at issue herein. We are not persuaded.

"A final decision has been rendered when the initial decision-maker [has] arrived at a definitive position on the issue that inflict[ed] an actual, concrete injury . . . . If a property owner has not obtained a final decision from the administrative agency applying the regulation, the reviewing court lacks jurisdiction to rule on a taking claim. The jurisdictional nature of finality derives from its similarity to ripeness." (Internal quotation marks omitted.) *Lost Trail, LLC* v. *Weston*, supra, 140

Conn. App. 147. Our Supreme Court has made it clear that "[a] plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination." *Gil* v. *Inland Wetlands & Watercourses Agency*, 219 Conn. 404, 415, 593 A.2d 1368 (1991).

The plaintiff asserted this same claim to the trial court in opposing dismissal of its claims for lack of ripeness. The trial court rejected the claim, explaining: "The plaintiff's argument is unavailing for two reasons. . . . First, a vested property right is simply a term used to describe a constitutionally protectable property interest, which must be demonstrated in order to assert a takings claim. See *Brady* v. *Colchester*, 863 F.2d 205, 212 (2d Cir. 1988) (in the context of fourteenth amendment due process claim, employing the term vested property right interchangeably with property interest . . . that was protectable under the fourteenth amendment . . . .). The court's research has failed to disclose any authority for the proposition that the existence of a vested property right excuses the plaintiff from the separate requirements of subject matter jurisdiction for its § 1983 challenges.

"Second, the court is persuaded by the District Court's holding in *Lost Trail, LLC*, that the town's alleged prospective refusal to issue zoning or building permits until subdivision approval is obtained for the four lots [does not] demonstrate either a final decision or futility exempting Lost Trail from the final decision requirement. Lost Trail's futility argument hinges largely on what it deems a purely legal question, namely whether the [Georgetown] lots exist as a matter of law as [four] separate parcels under Connecticut statutory law and case law. . . . Regardless of the merit to Lost Trail's legal argument, it has never been presented to the Planning and Zoning Commission for its formal consideration and thus Lost Trail has not obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property . . . . *Lost Trail, LLC* v. *Weston*, supra, 485 F. Supp. 2d 66]. The court also notes that the Appellate Court plainly held, albeit while addressing Lost Trail's municipal estoppel claim, that Lost Trail . . . cannot demonstrate that the town ever actually repudiated [the] apparent approval [in the form of stamping the maps of Lost Trail's property] because Lost Trail did not engage in the zoning approval process. *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 154–55.

"Thus, even if the court were to accept the plaintiff's characterization of Turner as the initial decision maker, his decision rejecting the plaintiff's application for a certificate of zoning compliance was not a final one. Instead, it was conditional, with Turner refusing to issue the certificate before the plaintiff had presented its

application to the commission and received subdivision approval. Turner merely referred the initial determination of the subdivision issue and the validity of the plaintiff's lots to the administrative body charged with deciding those issues. See General Statutes § 8-26 (a) (All plans for subdivisions and resubdivisions, including subdivisions and resubdivisions in existence but which were not submitted to the commission for required approval, whether or not shown on an existing map or plan or whether or not conveyances have been made of any of the property included in such subdivisions or resubdivisions, shall be submitted to the [planning and zoning] commission with an application in the form to be prescribed by it. The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with the applicable zoning regulations . . . .)." (Internal quotation marks omitted.)

We agree with the trial court that although the plaintiff had vested rights in the property at issue in this case, it did not have vested rights in the configuration of that property as it sought to reconfigure it, nor could it have acquired such vested rights without seeking approval of its proposed reconfiguration in accordance with established protocol and procedures. Indeed, none of the case law cited by the plaintiff in its brief to this court supports the plaintiff's claim. We thus agree with the trial court's thorough and well reasoned analysis of this claim. It would serve no useful purpose to discuss it further.

IV

The plaintiff next claims that this court's decision in *Lost Trail, LLC*, supra, 140 Conn. App. 136, was factually distinguishable from the present case, and thus that the trial court improperly relied upon it as binding precedent in this case. Although the trial court relied heavily upon *Lost Trail, LLC*, its jurisdictional inquiry was based upon the factual record developed throughout the proceedings, up to the jury's verdict, *in this case*. The court relied upon *Lost Trail, LLC*, for its legal analysis and factual similarities. To the extent that *Lost Trail, LLC*, differed factually from the case at hand, it is clear that the trial court considered any factual differences in assessing its jurisdiction over the plaintiff's claims in this case. The court properly bore in mind the prior rulings in *Lost Trail, LLC*, with an eye to the consistent application of the relevant legal principles as they applied to the facts before it here. We cannot conclude that the court's reliance on *Lost Trail, LLC*, for that purpose was in error.

V

The plaintiff next claims that the court erred in rejecting its claim that it would have been futile to apply to the commission for subdivision approval, and thus that it should have been excused from applying to the commission for that approval. We disagree.

"To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow *any* reasonable alternative use of his property." (Emphasis in original.) *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 415. Thus, "although repeated applications and denials are not necessary to show finality, in most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is final for the purposes of the takings clause. . . . [R]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews." (Citation omitted; internal quotation marks omitted.) Id., 417.

"A property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile. That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Murphy* v. *New Milford Zoning Commission*, supra, 402 F.3d 349.

In considering the plaintiff's claim of futility, the trial court noted with approval this court's prior decision in *Lost Trail, LLC*, in which the plaintiff also claimed that it would have been futile to apply to the commission for subdivision approval, and thus that it should not have been required to do so in order to demonstrate finality. The court explained, inter alia, the following as it pertained to the plaintiff's futility argument: "[W]ith regard to the plaintiff's futility argument, the Appellate Court held that Lost Trail cannot claim futility by setting up its own obstacles. Put simply, Lost Trail claims that it would have been futile to pursue step two of an administrative process, applying for zoning and building permits, because it refused to engage in step one, pursuing the opinion of the commission as to whether a subdivision had been created. . . . *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 152. Moreover, [i]t is futile to seek a[n] [administrative] remedy only when such action *could not* result in a favorable decision and *invariably* would result in further judicial proceedings. . . . It is clear that the commission could have determined that Lost Trail had not created a subdivision—as it later did—or approved an application to subdivide its property, clearing the way for zoning and building permits to be issued. Thus, we reject Lost Trail's attempt to bootstrap its way to futility. . . . Id." (Emphasis in original; internal quotation marks omitted.) The court

thus rejected the plaintiff's argument that it would have been futile to engage in the zoning process, noting that, as in *Lost Trail, LLC*, the commission granted a subdivision application relating to the property in question, in which a subsequent owner of the property was permitted to subdivide the property.

Here, not only did the commission not dig in its heels and refuse to grant any subdivision proposals submitted by the plaintiff, but the plaintiff was directed at every turn, by every town representative with whom it spoke about the matter, to seek approval from the commission. It never did so. The plaintiff's futility argument is further belied by Walpuck's testimony that he did not apply for subdivision approval because it was a time-consuming and expensive process and because his attorney told him that it might impair the collateral to his loan or it could be viewed as a possible admission that the lot line adjustments were invalid. As aptly noted by the trial court, if the plaintiff had applied to the commission seventeen years ago, when Hawkins advised it of the invalidity of its attempt to obtain a reconfiguration of the lots on its property by filing a map showing the lot line adjustments, it might have obtained approval from the commission, and would have avoided wasting many years and significant amounts of state and municipal resources. If the commission had denied its application, it could have established the jurisdictional basis for its judicial challenge that it now lacks. As in *Lost Trail, LLC*, the plaintiff put up its own obstacles. It cannot now hide behind those self-imposed obstacles and avail itself of the futility exception.

### VI

The plaintiff next claims that the concept of ripeness for review does not apply to § 1983 claims for violations of equal protection and procedural due process. We disagree.

"The ripeness requirement of *Williamson* [*County Regional Planning Commission* v. *Hamilton Bank*, supra, 473 U.S. 172], although announced in a taking[s] context, has been extended to equal protection and due process claims asserted in the context of land use challenges. *Dougherty* v. [*North Hempstead Board*] *of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); see also *Murphy* [v. *New Milford Zoning Commission*, supra, 402 F.3d 349] (discussing application of the *Williamson* finality rule to substantive due process, procedural due process, and equal protection challenges to zoning decisions)." (Internal quotation marks omitted.) *Lost Trail, LLC* v. *Weston*, supra, 485 F. Supp. 2d 64.

The plaintiff argues that its claims are not subject to ripeness analysis because they are not directly related to its takings or inverse condemnation claims. This argument is belied by the plaintiff's complaint, in which

the allegations underlying its takings or inverse condemnation claims mirror those set forth in its § 1983 claims, with the exception of a conclusory allegation at the end of each separate count that the facts therein pleaded gave rise to the legal cause of action claimed therein. Because the plaintiff's takings claims are inextricably intertwined with its § 1983 claims, this argument must fail.

VII

The plaintiff finally claims that the trial court's decision to grant the town's motion for articulation and to file a revised memorandum of decision, omitting any reference to the inapplicable exhaustion of administrative remedies doctrine, materially changed its June 9, 2015 decision in this case. We are unpersuaded.

As noted, the town moved for articulation of the trial court's June 9, 2015 memorandum of decision, seeking clarification of the basis for the dismissal of the plaintiff's claims. Specifically, the town sought clarification of any ambiguity as to the legal basis for the court's determination that the plaintiff's claims were not ripe for adjudication. In granting the town's motion for articulation, the trial court first stated its belief that the basis for its June 9, 2015 decision was clear. The court, nevertheless, issued a revised memorandum of decision to eliminate any references to the exhaustion of administrative remedies doctrine to avoid any ambiguity or confusion as to the basis of its decision. The plaintiff claims that in so doing, the court materially altered its decision.

It is well established that "[a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . In the absence of an articulation, we are unable to determine the basis for the court's decision, and we therefore decline to review this claim." (Internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 140, 989 A.2d 588 (2010).

At the outset of the trial court's June 9, 2015 memorandum of decision, the court specifically stated that, because the plaintiff had "failed to prove that a final decision was rendered by any administrative body charged with allegedly depriving [the] plaintiff of its rights," or "that it would have been futile to pursue available administrative remedies," the plaintiff's claims were not ripe for adjudication, and thus the court lacked jurisdiction over them. A review of the trial court's June 9, 2015 memorandum of decision in its entirety reveals that the court's decision focused on (1) the requirement of finality for the plaintiff's state

takings claim, (2) the requirement of ripeness (and the futility exception thereto) with respect to the plaintiff's federal claims and (3) the fact that the present case was similar to *Lost Trail, LLC*, which was essentially decided by this court and the federal courts on grounds of finality and ripeness. Although the court's June 9, 2015 memorandum of decision at times mentioned the exhaustion of administrative remedies, it did so only in passing without any discussion of that doctrine or how it would apply to the present case. Thus, a fair reading of the court's June 9, 2015 memorandum of decision does not indicate that the exhaustion of administrative remedies doctrine formed the basis for the trial court's decision in this case. Including no reference to that doctrine in the court's October 19, 2015 memorandum of decision thus served only to dispel any confusion concerning the basis of the court's original decision, which is an appropriate use of the articulation process.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] As a claim against a subdivision of the state, this claim was treated as a claim under the fifth and fourteenth amendments to the United States constitution. Even so, we will refer to it, as did the parties and the trial court, as a claim under the fifth amendment.

[2] Prior to trial, the plaintiff's claim for violation of substantive due process was stricken as legally insufficient. The plaintiff's additional claims, one for a declaratory judgment and another asserting municipal estoppel, were dismissed prior to trial. Those rulings have not been challenged on appeal.

[3] Because we reject all of the plaintiff's claims on appeal, we need not address the town's proposed alternative ground to affirm, which is that the plaintiff failed to seek any variances.

[4] See footnote 1 of this opinion.

[5] The plaintiff also claims that "[t]he regulatory takings claim based on the Connecticut constitution was incorrectly dismissed for lack of finality, and the state constitution does not apply to the equal protection and procedural due process claims." In support of this claim, the plaintiff claims to be challenging a ruling that the trial court purportedly made regarding its "regulatory takings claim under the Connecticut constitution" in response to the fifth motion to dismiss, which was filed by the town after the jury returned its verdict. Because the court dismissed the plaintiff's regulatory takings claim "for lack of finality" upon its sua sponte raising of the issue of subject matter jurisdiction, the plaintiff's claim in this regard is unfounded.